# Appeal of the City of Pittsburgh.

1. Natural gas companies, incorporated under the Act of May 29th, 1885, P. L. 29, providing for the incorporation and regulation of such companies are by said act invested with the rights of eminent domain, and all other powers and privileges, necessary to the convenient and successful prosecution of the business for which they are incorporated.

The powers of the councils of cities and boroughs to legislate in regard to natural gas companies are only such as are delegated to them by. the Act of May 29th, 1885, P. L. 29.. They are authorized to give or withhold their assent without more. They have no power to couple their assent with any condition or restriction not imposed by said Act unless the company agrees to accept the same, and be bound thereby; and even then the conditions or restrictions so accepted by the company must harmonize and in nowise conflict with the provisions of said Act. The assent of councils being given, the regulations they are authorized to adopt are such only as relate to the manner of laying pipes, altering, inspecting and repairing the sewers, and the character thereof with respect. to safety and public convenience. These regulations must also be reasonable and not in conflict with any of the provisions of the Act. In all other respects, the power of such companies are clearly defined and their duties and liabilities prescribed by the Act under which they are incorporated.

[Appeal of the City of Pittsburgh.]

3.   Courts of equity have jurisdiction and power to declare what regulations imposed by councils of cities and boroughs on natural gas companies are illegal, and to restrain said cities or boroughs from enforcing them.

November 11th, 1886.   Before GORDON, PAXSON, TRUNKEY, STERRETT, GREEN, and CLARK, JJ.   MERCUR, C. J., absent.

APPEAL from the Court of Common Pleas No. 2, of *Allegheny county :*. Of October Term, 1886, No. 139.

Appeal of the City of Pittsburgh from a decree of said court granting a perpetual injunction against said city restraining it from enforcing certain specific portions of two city ordinances regulating the People's Natural Gas Company.

The People's Natural Gas Company filed its bill in equity against the city of Pittsburgh, praying that said ordinances might be declared illegal, and that the said city might be enjoined from enforcing them.

The city of Pittsburgh filed its answer and after issue was joined, M. A. Woodward, Esq., was appointed Examiner and Master, who took a large amount of testimony, 425 printed pages and reported that the prayer of the plaintiff should be granted.

Exceptions were filed to his reports, which were overruled, and the following decree was entered.

The exceptions to the Master's report are overruled and the same is confirmed, except as modified in the foregoing opinion. And it is ordered that a decree be drawn, declaring the following portions of the ordinances of August 10th, 1885, and December 29th, 1885, illegal, null and void, and the city be restrained from enforcing the same, to wit:

*Of the ordinance of August 10th,* 1885, the latter part of section 1, beginning with "and shall be laid under his supervision and" &c.; the latter part of section 2, beginning with " and shall be fully tested," &c.; the whole of section 3 and the whole of section 7.

*Of the ordinance of December 29th,* 1885, of section 2, the first sentence, the latter part of A, beginning with " who shall, subject to the further," &c., and the whole of B, C and D; the latter part of section 3, beginning with " but from any exercise of discretion," &c.: the latter part of section 4, beginning with " and in no case shall the city be held liable," &c.; the whole of section 6; the whole of section 7, except the last clause, beginning with "no streets, highways, lanes or alleys within said city shall be opened," &c.; the whole of section 8, and the whole of section 9.

And it is further ordered that the costs of this case, including the Master's fee of $2,500, be paid one half by each party.

The following are abstracts of said ordinances as found by the Master:

The ordinance of December 29th, 1885, referred to in the bill and answer, grants to all corporations formed for supplying natural gas within the limits of the city, under the said Act of May 29th, 1885, "The privilege of opening any street, lane, road or alley within the limits of the city and of laying down pipes for the purpose of conveying or distributing gas, with the necessary street boxes and valves, and with the further privilege of making the necessary connections for consumers, subject, however, to the further provisions of this ordinance, and also subject to all the provisions of said city, approved August 10th, 1885."

The second section provides, The privileges granted by this ordinance shall be enjoyed by any such corporation only upon the following conditions, to wit:

(*a*). That in asking a permit to lay pipes, a plan and full specifications shall be furnished the Commissioner of Highways showing the streets, etc., proposed to be opened, the location, kind and size of pipes to be laid, the manner of laying and estimate of the probable cost thereof, and like plans, specifications and estimates shall be furnished in all cases of any proposed extensions, and if such permit is refused by said Commissioner the same shall be submitted to councils, whose judgment thereon shall be final.

(*b*). No such permit shall issue until the president and treasurer of the company shall file with the city controller a certificate verified by their affidavit, setting out the names of the stockholders, the amount of stock held or subscribed for by each, and that at least 50 per cent. of the amount of the "respective subscriptions" have "already been paid in good faith in cash into the treasury of the company," or if not in cash, then setting out in detail how the same has been paid. Nor shall such premit issue "unless it shall appear by said certificate to the satisfaction of the Commissioner of Highways that a sufficient amount of capital has been subscribed to complete the work in accordance with the plans, specifications and estimates.

(*c*). That corporations enjoying the privileges of this ordinance cannot, without the assent of the majority in value of its stockholders and the approval of councils by ordinance, transfer said privileges to any other corporation or company, but doing so the transfer shall be invalid and shall work a forfeiture of the privileges granted, and operate to vest in the city all the property that the said corporation has in use for the conveyance of natural gas within said city.

(*d*). That when requested at any time by either branch of

councils by the street committee, or by the mayor, city attorney and city controller, or any two of them, with the city controller, any such corporation shall, by its president and treasurer furnish a certificate verified by their affiadvit, setting out a list of its stockholders, and that they hold stock in good faith for themselves and not for others as they believe, and were held by trustees, the name of the persons for whom held. The said corporation to require information thereon, upon receiving the subscription by, or. a register of transfers to trustees.

3. Upon compliance with said conditions, the Commissioner of Highways shall, from time to time, grant permits to open the streets, " subject to all the provisions hereof, and of other ordinances regulating the opening of streets, provided," that he " may in his discretion refuse such permission if in his judgment the location proposed upon any highway is injurious to the city; and he may before issuing permits, require alterations of the said plans, and direct the pipes to be laid upon such parts of any highway as to him shall seem fit," and he may in his discretion limit the number of pipes upon any highway to two trunk lines of competing companies, to which discretion an appeal may be had to councils, whose actions shall be " final and conclusive," and councils shall determine, " what shall constitute a competing company."

4. Section four provides for the re-paving or keeping in repair, for nine months, 'the streets opened for laying pipes, and estimates for the cost thereof, for each section not exceeding two squares, shall be made by the Commissioner of Highways, and payment of the amount made to him, before he shall issue a permit for the opening, and that for all loss, injury or damage from such opening, re-paving, laying and operating the pipes, the Corporation shall indemnify the city and reimburse the city for all costs, expenses, suits or damage resulting to her therefrom, for any loss, injury or damage to any person or property.

5. Section five as a condition, for the privileges granted any corporation, shall on demand furnish free of cost all gas necessary for use in the buildings of the police, fire and market and city property departments and public school buildings on the lines of its pipes, said city authorities making the connections at their own cost.

6. Section six provides, that the privileges granted shall in no case inure to the benefit of the assigns of any such corporation ; and that any attempt, directly or indirectly by means of the assignment, or by a transfer of a majority of the stock to place the company directly or indirectly under the ownership, management or control of any other company in the same

business shall be deemed an absolute forfeiture, and a surrender to the city of all rights hereunder, and of all right, title and interest of the said company in all the pipes and property thereof pertaining to the conveyance, supply and distribution of gas in the city, and that no delay or omission of the city or of its officers shall be deemed a waiver, and she may take possession at any time and use or sell said property for her own benefit.

7.  Section seven provides that if, in the opinion of the city engineer, the laying of pipes is unnecessarily delayed or are laid in violation of any of the provisions of this ordinance, or that of August 10th, 1885, he shall have power to stop the work.  And if careless, incompetent or unskillful men are employed in such work, he may discharge such workmen and take charge of the work and prosecute it to completion, first making estimates not exceeding two squares at a time which shall be advanced to him by the company, or the said work suspended, and the privileges of the company so to enter upon the streets is thereupon forfeited, in case of neglect or refusal for fifteen days to employ competent and skillful workmen to do the same, and that the streets shall not be opened and worked upon for the laying of pipes between November 15th and April 15th of the next ensuing year.

8.  Provides that the company shall furnish a bond with sureties approved by the city attorney in the sum of one hundred thousand dollars, conditioned for the faithful compliance with the conditions and provisions of this ordinance, and indemnify the city against all loss, costs, suits, damages and expenses arising from the company's occupation and use of the streets.

9.  Section nine provides that before permits shall issue to any company, it shall file a certificate under the seal of the company, with a certified copy of a resolution of its stockholders, authorizing its acceptance of " all the conditions, provisions and stipulations of this ordinance."

The ordinance of August 10th, 1885, provides, " Section first.  That pipes be laid at a depth of not less than four feet and in such parts of the streets as the city engineer may direct, and shall be laid " under his supervision and control, and he shall have the right, and is hereby empowered to place suitable persons in charge of said work during its progress, to supervise and direct the work thereon at the expense of the individual company or corporation having such pipes laid : Provided, however, that the said city shall in no event be liable for any injury or damage done to persons or property by reason of assuming the control and direction of the work."

Section 2 requires the pipes to be tested by hydraulic pressure, at three times the maximum pressure allowed in use.

Section 3 requires that a pressure in any lines of pipe shall not exceed 15 pounds to the square inch at the city limits, excepting in the inner of encased pipes heretofore laid, and shall be provided with safety valves, the number and character of which shall first be examined and approved by the city engineer.

Section 4 provides, there shall be supplied "a system to be approved by the city engineer and natural gas committee of councils, of escape pipes sufficient to carry off any and all gas which may leak or escape through defective joints, service pipe connections or defects in the pipe." And gauges showing the pressure shall be erected and open at all times to inspection, and placed at points designated by the city engineer.

Section 5 that suitable means shall be used to protect pipes laid where there are cinders or other injurious material.

Section 6 provides for laying the pipes before November 15th, 1885.

Section 7 provides, that before entering on the streets to lay pipes, there must be an acceptance in writing and under seal, "of all the terms, conditions and provisions of this ordinance, in addition to any other provisions imposed by the City Councils."

The facts of the case sufficiently appear from the following opinion of the court, WHITE, J., overruling the exceptions to the Master's report, and from the opinion of the supreme court.

The recent discovery of natural gas in such large quantities was a revelation of the secrets and hidden treasures in the laboratory of nature, not dreamed of by philosophers or scientists ten years ago. The invention of appliances by which it may be transported long distances for use, is another triumph of human genius in utilizing the products of nature. Within the last five years it has been applied to family use, heating furnaces and driving mills and machinery, and found to be more convenient and economical than any other fuel. From the extent of territory and the immense supplies, it promises to supersede in a few years, wood and coal as fuel, in one half the State.

As natural gas was a new product, totally different from anything heretofore in use, and the methods of utilizing it, as well as the purposes to which it might be applied, were also new, we had no laws or usages relating to it, or governing its production or use. New legislation was required.

The city of Pittsburgh was the first to legislate on the subject. An ordinance was passed June 19th, 1882, granting to the Penn Fuel Company the right to lay pipes in the streets

of the city, for the furnishing of natural gas, and prescribing regulations on the subject. This was followed by six other ordinances, granting rights to other companies: February 8th, 1884, to the Washington Natural Gas Company, limited, (for the wards on the South Side); July 31st, 1885, to George Westinghouse, Jr.; October 25th, 1884, to James A. Chambers *et al.*; November 6th, 1884, to Lloyd, Wood *et al.*; November 6th, 1884, to J. K. Verner *et al.*; November 13th, 1884, to George Westinghouse, Jr., amending his ordinance of July 31st.

All of these were special ordinances. All of these companies (except one) having rights in the city between the rivers were consolidated, so that at the time of the passage of the general ordinance of December 29th, 1885, hereinafter referred to, there was but one company having rights, and in operation in the city between the rivers, now known as the Philadelphia Company.

The Penn Fuel Company, having the first ordinance, contested the right of the Fuel Gas Company, which claimed the exclusive right to supply natural gas for a limited term of years under its charter and the Act of 29th April, 1874. That was the question in Emerson *v.* The Commonwealth, W. N. C. vol 15, p 425. The Supreme Court decided that there were no laws authorizing the incorporation of natural gas companies. Of course no natural gas company had any legal existence at that time, or possessed any legal rights. Nor could the city, by its ordinance confer any legal rights upon such a company. In the opinion of the Supreme Court, recommending legislation on the subject, it was suggested that no exclusive rights be allowed to any natural gas company. In pursuance of that decision, the Act of Assembly of May 29th, 1885, was passed, and subsequently the city passed the two general Ordinances of August 10th, 1885, and December 29th, 1885, which have given rise to the present contention.

The foregoing facts are essential to a proper understanding of the questions at issue, and afford considerable light in giving a true interpretation of the Act and the Ordinances.

The Act is a general one for the whole state, providing for the incorporation and organization of natural gas companies, defining their powers, and prescribing their duties and liabilities, very fully and in detail. The preamble declares that the discovery of natural gas in large quantities "renders it a prime necessity for use as a fuel and otherwise in the development of trade in this commonwealth," and that "it has become essential" that "corporations for the production, storage, conveyance and distribution of said gas shall be authorized and provided for by Legislation." And in conformity to the sug-

gestion of the Supreme Court, the proviso to the second section says: "That neither this Act nor any other shall be so construed as to confer, authorize or give color to any claim of exclusive right in any corporation, howsoever formed, dealing in any way or for any purpose in natural gas."

Section 10 declares "the transportation and supply of natural gas for public consumption" to be a "public use," and makes it the duty of companies to supply consumers along their lines; gives them the right of eminent domain, prescribes the mode of laying pipe across railroads and canals, and through agricultural lands.

Section 11 gives "the right to enter upon any public lane, street, alley or highway, for the purpose of laying down pipes, altering, inspecting and repairing the same," the right to be exercised "in such way as to do as little damage as possible to such highways, and to impair as little as possible the free use thereof," and subject to "such regulations as the councils of any city may by ordinance adopt."

Section 12 provides that where disputes arise between the companies and municipalities or land owners "as to the manner of laying the pipes and the character thereof, with respect to safety and public convenience," either party may petition the Court of Common Pleas for a hearing and proper decree, and declares that it shall be the duty of the court "to have the hearing and make its decree with all convenient speed and promptness."

Section 13 provides that new companies "shall not enter upon or lay down their pipes or conduits on any street or highway of any borough or city without the assent of the councils of such borough or city, by ordinance duly passed and approved."

It is contended by the plaintiff company in this case that some of the provisions of the Ordinances of August 10th and December 29th are illegal, being in conflict with the Act of Assembly, and others impose onerous conditions and burdens not authorized by the Act, and tending to defeat its benevolent purposes.

To which the city replies, in substance, "that is immaterial; the Act says you cannot enter without our assent; we assent on these conditions; you must either accept them or stay out."

If that position is correct, any city or borough in the Commonwealth may, so far as its citizens are concerned, render the Act a nullity, and thwart the benevolent purposes of the Act towards others, for it may be necessary to pass through a city or borough to supply other localities which need and want this "prime necessity."

Whether, in the absence of legislation, a city or borough

has the right to grant the use of its streets to a natural gas
company, I very much question.  Cities derive all their pow-
ers ·from grants in their charters or Acts of the Legislature.
The use of the .streets for sewers, water and artificial gas
pipes, has been expressly authorized or sanctioned by legis-
lative enactments and long usage.  There were no laws, nor
any usage, in reference to natural gas.  Natural gas ·being a
new product of great public utility, perhaps, under the prin-
ciples of the common law—which always adapted themselves
to new emergencies—it might have been considered of such
"prime necessity" for public use, as to be open and free to all
the citizens alike.  The city, by virtue of its police powers to
conserve the public safety and convenience, would, doubtless,
have possessed power to adopt reasonable regulations on the
subject.  But I doubt whether it could have granted any
privileges, certainly no exclusive or special privileges, to any
person or company.

But whether that be so or not, is not material in this case.
We have here a statute on the subject, carefully prepared,
very comprehensive and minute in its details.  Can the city,
in granting its assent, ignore that statute, and require the
company to enter into a special contract, binding it to condi-
tions and burdens not authorized by the statute?

I· think not.  This statute is the law of the state on the
subject.  It applies to all the cities and boroughs in the state.
Each city and borough can not have its own law on the sub-
ject.  They possess no powers on the subject except as con-
ferred or authorized in this statute.

If a city or borough does not want natural gas for consump-
tion, it can refuse its assent to any company entering for that
purpose.  But if it wants natural gas and gives its assent, it
must be on the terms and conditions of the statute.  If it
assents to any corporation entering to supply its citizens with
natural gas, it must let that corporation ·enter with all the
rights and privileges guaranteed to it by the statute.

Nor can the city give any exclusive privileges to any one
company.  The peculiar and very comprehensive language of
the proviso to the second section of the Act clearly shows the
legislative intent that no exclusive rights should ever be con-
ferred on any company. in any manner whatever.

The word "assent," in the 13th section, must be understood
in its ordinary sense, as consenting or agreeing to.  Something
is stated or proposed to another; he assents to it, that is,
accepts it, agrees to it.  If he asserts or proposes something
·else, it is not assenting to what was asserted or. proposed, but
offering something else.  A corporation, with its charter under
·the Act of May 29th, 1885, comes to the city and asks consent

to enter with its chartered rights and privileges.   The statute
says to the city:   You may consent or not, as you please.   It
does not say you may refuse and then make the best bargain
you can with the company.   You may assent or dissent, that
is all.   If you assent, it must be with the rights the company
has under the statute, and you can do nothing more than
ordain such reasonable regulations as are secured to you in
the 11th section.

The ordinances of August 10th and December 29th are gen-
eral ordinances, passed after the Act had gone into operation,
and from the face of them evidently intended to be in pursu-
ance of this Act.   The first, that of August 10th, is entitled
" An ordinance regulating the manner of laying pipes through,
over or under the streets, roads, lanes and alleys of the city of
Pittsburgh, to be used in carrying, transporting and supply-
ing natural gas, prescribing the manner of testing the same,
limiting the pressure therein, and providing for gas escaping
therefrom."

The ordinance of December 29th is entitled " An ordinance
granting to corporations, whose purpose it shall be to furnish
natural gas for heat and light to the public in the city of Pitts-
burgh, the right to lay pipes through the streets, lanes, roads
and alleys of said city for the conveyance and distribution of
gas."

The ordinance of August was manifestly intended to pre-
scribe the regulations contemplated in the 11th section of the
Act, and that of December to give the assent of the city,
although the word is not used in the ordinance.   The 1st sec-
tion, however, expressly refers to the Act, and ordains that all
corporations organized under it " shall have the privilege of
opening any street, lane, road or alley within the limits of said
city, and of laying down pipes for the purpose of conveying
and distributing gas, with necessary street boxes and valves,
and with the further privilege of making necessary connections
for consumers, subject, however, to further provisions of this
ordinance, and also subject to all the provisions of an ordi-
nance of the city, approved August 10th, 1885."

By the title, and that 1st section, the city gives its "assent"
—not by using that word, but by other words equally as ex-
pressive—to all companies entering the city.   This assent is
not suspended on any condition precedent, but is accompanied
with certain conditions and stipulations as to the manner of
enjoying the privileges purporting to be conferred.   (The city
really conferred no privileges, for all the rights of these cor-
porations are derived from the Act of Assembly.)   This view
is confirmed by the 2d section of the ordinance, which says

" the privileges granted by this ordinance shall be enjoyed by any such corporation only upon the following conditions."

Some of the conditions of this ordinance were new, and some of its provisions very burdensome, from which the company then operating in the city, was free, and no doubt it was intended that all new companies should submit to these conditions and burdens. Whether they were designed to befriend the company then supplying gas, or not, is immaterial as to the point we are now considering. It is this: that these conditions were not conditions precedent to the assent of the city, but as conditions imposed cotemporaneously with the giving of assent under the Act. If viewed in this light, they stand on the footing of regulations under the 11th section, and if illegal must fall.

While I regard this as the true construction of this ordinance, I do not concede the right of the city to impose illegal or unreasonable conditions, as conditions precedent to its assent, and thus disregard or trifle with the Act of Assembly.

The powers of cities and boroughs over the subject, I think, are limited to two things, which are reserved to them in the Act of Assembly: 1st, giving or refusing assent to any corporation entering with natural gas, and, 2d, ordaining reasonable regulations as to the manner of using the streets, the manner of laying pipes, the character of the same, and other matters touching the public safety and convenience. If the assent is given, it must be without conditions or qualifications. The regulations must be legal and reasonable and in harmony with the Act of Assembly. If they are not, if they are in conflict with the Act of Assembly, the courts have undoubted power to declare them illegal and restrain the city from enforcing them.

This brings us to a consideration in detail of the two ordinances.

*Ordinance* of August 10th, 1885. Section 1. The first part of this section, fixing the depth to which the pipes shall be sunk, and allowing the city engineer to designate what portion of the street shall be occupied, are proper regulations. All the remainder of that section, beginning with the words, " and shall be laid under his supervision," etc., is unwise and unreasonable. It is unwise to have the city engineer control the work, place men in charge of it, supervise and direct it, to the exclusion of the company, for that would make the city directly responsible for all acts of negligence in prosecuting the work. And it would be unjust to the company, holding it responsible for expenses and for the negligence of men over whom they had no control.

Sec. 2. The first sentence is right. But the remainder,

beginning with, "and shall be fully tested with an air pressure," etc., is useless and unreasonable according to the facts found by the Master, and by its indefiniteness as to how, when or by whom the test is to be made, and can only lead to trouble and litigation.

Sec. 3. The maximum of pressure allowed by this section is a great mistake, as found by the Master, and as the evidence taken by him fully establishes. It seems to contemplate only one kind of pipe and one plan for guarding against accidents. The evidence shows that there are other pipes better, and other modes safer and better, than those provided for in this section, and that under these restrictions new companies could scarcely enter into competition with the old company. If a company uses improper pipes or improper methods, the city has a right to, and should, interfere. If they can not agree, the Common Pleas will, on application, restrain the company, and under the 12th section of the Act require the company to adopt all precautions necessary for the public safety.

Secs. 4 and 5 seem to be reasonable, although a good deal of power and discretion are confided to the city engineer. But this is almost unavoidable. The city has a right to require protection to the public from escaping gas. If the city engineer or gas committee of councils should be unreasonable in their requirements, the Act provides for an appeal to court and a speedy decision.

Sec. 7. This section is useless and improper. There is no necessity for any formal acceptance of the legal provisions of the ordinance, for all companies will be bound by them without such formal acceptance. As to the illegal and improper provisions, the city has no right to require companies to accept them.

*Ordinance* of December 29th, 1885. Sec. 2. The first sentence of this section is useless so far as the legal provisions of the ordinance are concerned, for the companies are bound by them without this. It is illegal as to the illegal provisions of this ordinance.

Sec. 2, *A*. It is right and reasonable that companies shall furnish a plan showing the streets they wish to occupy, the kind and size of pipes, etc. Permits are provided for in the 3d section. It is unreasonable to submit "plans, methods, specifications and estimates" to the acceptance or refusal of the Commissioner of Highways, and illegal to provide for an appeal to councils, whose action shall be final. The Act provides for an appeal to court, and the city has no right to require companies to waive that. The latter part of section 2, A, beginning with "who shall, subject to the further," etc., is improper and illegal.

*B, C* and *D* of Sec. 2. These provisions and requirements of the ordinance are in no sense "regulations." They do not relate to the use of the streets, the character of pipes or the manner of laying them, or anything touching the public safety or convenience. In several respects they contravene the Act of Assembly. Section 1 of the Act says that, when 10 per cent. of the capital stock has been paid in, the company may obtain a charter and is invested with all the rights and privileges conferred in the Act. " B " of section 2 of the ordinance says that, unless 50 per cent. has been paid in, the company shall have no rights in the city of Pittsburgh.

Section 17 of the Act provides a mode by which two or more companies may be consolidated. "C" of section 2 of the ordinance attempts, in almost *totidem verbis*, to apply that section of the Act to any transfer of the stock of a company, and declares that any transfer otherwise shall forfeit all its rights and property to the city of Pittsburgh. "D" of section 2 of the ordinance requires the company, whenever requested by councils, by the street committee, mayor, city solicitor or city controller, to furnish a list of its stockholders, with various other matters concerning the private affairs of the corporation, in which it is difficult to see any conceivable interest the city could have. This may be required of any company and "at any time." For what purpose? It can be of no use to the city; it is no "regulation"; it might be used by some corrupt official to worry and annoy an honest company.

Sec. 3. This section confers great powers upon the commissioner of highways. Yet some regulations on the subject are necessary, and it is impossible to provide for all cases by general ordinance. These discretionary powers are properly confided to the Commissioner of Highways. If he is unreasonable the company has its appeal to the Court of Common Pleas. But the latter part of the section, beginning with " but from any exercise of discretion, etc.," is illegal, providing for an appeal to councils, which shall be final and conclusive, when the Act gives an appeal to the Common Pleas.

Sec. 4. The first part of this section, requiring companies to pay the expenses of re-paving the streets, is right. It may be a little hard to require them to pay the commissioner's estimate for nine months, and pay it in advance. But they are not entirely at the mercy of the commissioner. If he is unreasonable or exorbitant they have a remedy. The latter part of the section, however, " and in no case shall the city be held liable, etc.," is wholly useless. By striking out the latter part of section 1 of the Ordinance of August 10th, the city cannot be liable for acts of negligence in laying pipes, or be at any costs or expenses connected therewith, and therefore these

provisions are useless, and to ask the company to indemnify the city is an unreasonable requirement.

Sec. 6. While it might be desirable in the city, for some purposes, to prevent a transfer of the franchises and stock of a company, yet this cannot be done under the 17th section of the Act. That section expressly authorizes the consolidation of two or more companies. But it provides such guards and restrictions as will prevent abuse of the power. With the guards of that section, and no exclusive rights in any company, little or no danger need be apprehended from the transfer of stocks or the consolidation of companies. It is sufficient, however, to say that this section of the Ordinance cannot stand, as it contravenes the 17th section of the Act.

Sec. 7. This section is liable to the same objections as to the latter part of section 1 of the Ordinance of August 10th, only to a much greater degree. It gives the city engineer unwise and dangerous powers which may involve the city in expense, damages and litigation. Besides, the whole section is useless. If companies unnecessarily delay the work or violate any city ordinance on the subject, they can speedily be brought to account by suit or application to court. The latter clause of the section, however, providing that no street, etc., shall be opened for laying pipes between the 15th November and 15th April of any year, is a regulation within the powers of the city, and ought to stand.

Secs. 8 and 9. These sections are useless and burdensome and beyond the power of the city to exact. The bond is unnecessary to protect the city from acts of negligence on part of the company, for in no case is the city liable therefor. There is nothing to pay the city except for re-paving and repairing the streets opened for laying pipes, and this the Ordinance requires to be paid in advance. The city can not exact a bond or written consent to the performance of the illegal conditions and stipulations of the Ordinance.

After a full and careful examination of the voluminous testimony in this case, we are entirely satisfied it sustains the Master's findings on all material facts in the case.

The City of Pittsburgh upon the court entering the foregoing decree took this appeal assigning for error, *inter alia*:

1. That it did not by the Ordinance of December 29th, unqualifiedly assent to the entry of the People's Natural Gas Company, but (if at all) only on the conditions and terms set forth in the same. That this Ordinance is an entirety. If the conditions and terms are illegal or unreasonable, the whole Ordinance falls and the required assent is not given.

2. The councils having, on November 15th, 1885, "finally and absolutely" refused assent to the People's Natural Gas

Company to enter, it was an exhaustion of the power of councils, and even if, on December 29th, an unqualified assent had been given it would have been inoperative and void.

3.   The provisions of the Ordinances of August 10th, and December 29th, are reasonable and legal.

*W. C. Moreland*, city solicitor, and *D. T. Watson*, for appellants.—Where the Act incorporating the company requires that the company shall procure the assent of the city before it enters upon its streets—such assent is a condition precedent to such entry: Commonwealth *v.* Central Passenger Railway Company, 2 P. F. S., 506; Philadelphia *v.* Lombard & South Street Railway Company, 3 Grant, 403; Philadelphia *v.* Passenger Railway Company, 5 Philadelphia, 248; Appeal of Pittsburgh, Allegheny and Manchester Passenger Railway Company, 1 Pennypacker, 449; Federal Street and Pleasant Valley Railway Company *v.* Allegheny City, 31 Pittsburgh Legal Journal, 259.

It may be admitted that if the respondents (Councils of Pittsburgh) have an option to do one thing or another, the courts will not award a mandamus to compel one thing to be done.   They cannot be compelled to exercise their discretion in a particular way: Commonwealth *v.* Councils of Pittsburgh, 34 Pa. St., 517; Grant *v.* City of Erie, 69 Pa. St., 422; Commonwealth *v.* County Commissioners, 5 Binney, 536.

In the Northern Central Railway Company *v.* the Mayor of Baltimore, 21 Maryland, 104, the charter of the company required it to procure " the assent of the mayor and city councils" before entering on the streets of Baltimore.   The councils passed an ordinance annexing to the assent certain terms and conditions—which the company claimed were not only unreasonable, but in contravention of the charter of the company. Then, as here, the argument was made that the unreasonable parts fell, but the assent was valid.   But the Court of Appeals said that to so do was to act in direct disregard of all the rules of interpretation and construction and, they added, as to the unreasonable conditions and regulations.

They must be construed together with the first section as parts of the same ordinance, and the appellants cannot rightfully claim to act upon the assent given in the first section and disregard or repudiate the force of the terms and conditions imposed by this Ordinance.

To the same effect: The King *v.* Company of Fishermen, 8 Term Report, 352; Lathrop *v.* Mills, 19 California, 513; The State *v.* Perry county, 5 Ohio N. S., 497; Campan *v.* Detroit, 14 Michigan, 276; Boatmen *v.* Bond, 15 Wisconsin, 20; New York Central R. R. Co., *v.* Mayor, etc., 4 Blatchford, 193.

The very point here in dispute was decided by this court in the case of Musser *v.* Fairmount Railway Company, 5 Clark, 470. There the Act required the company to procure the assent of the city of Philadelphia to its entry in its streets. Such assent was given but annexed to it were numerous conditions which this court held were illegal because in conflict with the Act of Assembly. The opinion then proceeds— THOMPSON, J.,—"But the very Act of approval in this instance was conditioned and contingent upon the surrender of certain privileges to be evidenced by prescribed acts of the company. Standing alone the Ordinance was, virtually, a disapproval, for it was conditioned, and not an Act of assent, until the law was modified by a withdrawal of the privileges mentioned. . . . . . This, I think, was a defective and inoperative exercise of the power of election, conferred. . . . . ."

Admit for argument's sake that all these conditions precedent are unreasonable and void, what follows—not that they go down and the assent stands, but the whole Ordinance falls.

If the condition is precedent, inasmuch as the estate does not vest at all until such condition happens, the effect of its being unlawful or impossible is that the estate dependent on it falls and the grant or devise becomes wholly void: 1 Washburn Real Property, 471 *449; Vanhorne's Lessee *v.* Dorrance, 2 Dallas, 304–317.

As the People's Natural Gas Company shows, in proof of the averment, that the city assented to its entry upon its streets, under this Ordinance of December 29th, and this contains conditions precedent which are unreasonable and invalid (which we admit for argument's sake), and which the company refuses to perform, the result is that the grant to the People's Natural Gas Company falls with these void conditions.

*George Shiras, Jr.* and *S. Schoyer, Jr.*, for appellee.—Many of the so called regulations of the several Ordinances are unreasonable, illegal and invalid, Courts of Equity have jurisdiction to restrain the city in enforcing these portions of the Ordinances.

In Baltimore *v.* Radicke, 49 Maryland Rpts., 217, we find just such a case, and it was there held: First, That where a municipal corporation is seeking to enforce an ordinance which is void, a Court of Equity has jurisdiction, at the suit of any person who is injuriously affected thereby, to stay its execution by injunction. Second, That though the legislature had granted ample power of legislation, on the subject of the erection and use of steam engines within the city limits upon the Mayor and Councils of Baltimore, and that the mayor and city councils were the exclusive judges of the necessities of such legis-

lation, yet their direction was not beyond judicial control; for there may be a case in which an Ordinance passed under a grant of power like this, is so clearly unreasonable, so arbitrary, oppressive or partial, as to raise the presumption that the legislature never intended to confer the power to pass it, and to justify the courts in interposing and setting it aside as a plain abuse of authority. Third, That the ordinance requiring the removal of steam engines after notice from the mayor, did not prescribe regulations for their construction, location or use, but committed to the unrestrained will of a single public officer a power over the use of steam within the limits of the city practically absolute, so that he might prohibit the use altogether. Fourth, That an ordinance which clothes a single individual with such power, the exercise of which may proceed from enmity or prejudice, from favoritism and other improper influences and motives, easy of concealment and difficult to be detected and exposed, hardly falls within the domain of law, and is void and inoperative; Yick Wo *v.* Hopkins, 13 Am. & Eng. Corp. Cases, 187.

One section of an Ordinance may be held valid and obligatory while another section may be declared void: Northern Liberties Gas Co., 12 Pa. St., 318; Kneedler *v.* Norristown, 4 Out., 368; Mason *v.* Boone Co., 3 Wall Jr., 252; Savings Bank *v.* Makin, 23 Me., 360; Mirris *v.* W. States, 15 Peters, 445.

Mr. Justice STERRETT delivered the opinion of the court January 3d. 1887.

In June 1885, The People's Natural Gas Company was duly incorporated and organized under " an Act to provide for the Incorporation and Regulation of Natural Gas Companies," approved May 29th, 1885, and thus acquired all the rights, powers and privileges specified in the Act. Some of these, as expressed in the first section, are, " to produce, mine, own, deal in, transport, store and supply natural gas for either light, heat or both, or other purposes, and have all the rights and privileges necessary or convenient therefor."

The 2d section contains a proviso, " that neither this Act nor any other shall be so construed as to confer, authorize or give color to any claim of exclusive right in any corporation however formed, dealing in any way or for any purpose in natural gas."

After declaring that " the transportation and supply of natural gas for the public consumption " is " a public use," and requiring corporations, organized or provided for under the Act, " to furnish to consumers, along their lines and within their respective districts, natural gas for heat or light or other purposes as the corporation may determine," the 10th section

provides as follows; "Any and all corporations, that is or are now, or shall hereafter be engaged in such business, shall have the right of eminent domain for the laying of pipe lines for the transportation and distribution of natural gas," including "the right to appropriate land upon or under which to lay said lines, and locate pipes upon and over, under and across any land, rivers, streams, bridges, roads, streets, lanes, alleys or other public highways, or other pipe lines, or to cross railroads or canals: Provided, in case the pipe lines cross any railroad operated by steam, or canal, the same shall be located under or above such railroad and canal, and in such manner as the railroad or canal company may reasonably direct; and provided further, that any company laying a pipe line under the provisions hereof shall be liable for all damages occasioned by reason of the negligence of such gas company," etc.

It must be obvious, from a consideration of the foregoing and other provsions of the Act, that companies organized under it are invested, in the most ample manner, with the rights of eminent domain and all other powers and privileges necessary to the convenient and successful prosecution of the business for which they are incorporated. Indeed, they would be absolutely independent of the action of councils if it were not for the provision contained in the 11th section making "the right to enter upon any public lane, street, alley, or highway for the purpose of laying down pipes, altering, inspecting or repairing the same, . . . . . subject to such regulations as the Councils of any city may by ordinance adopt," and that of the 13th section, declaring that companies, of the class to which appellee belongs, "shall not enter upon or lay down their pipes or conduits on any street or highway of any borough or city . . . . . without the assent of the councils of such borough or city by ordinance duly passed and approved." So far as the limited authority to legislate on these peculiar subjects has been delegated to Councils, and to that extent only, can the corporate powers, rights and privileges of natural gas companies be qualified or limited. Councils are authorized to give or withhold their assent, without more. They have no right to couple their assent with any condition or restriction not imposed by the Act, unless the company agrees to accept the same and be bound thereby; and even then, the conditions or restrictions, so accepted by the company, must harmonize and in nowise conflict with the provisions of the Act. The assent of Councils being given, the regulations they are authorized to adopt are such only as relate to the manner of laying pipes, altering, inspecting and repairing the same, and the character thereof with respect to safety and public convenience. These regulations must also be reasonable and not in conflict with any of the

provisions of the Act.   In all other respects, the powers of such companies are clearly defined and their duties and liabilities prescribed by the Act under which they are incorporated. In view of the limited authority delegated to councils, it is a grave mistake to assume, as they appear to have done in this case, that they have the power to legislate on any and everything directly or indirectly connected with the general subject. The legislature, foreseeing that disputes would probably arise between municipal authorities and natural gas companies, and that it would be impracticable as well as unsafe to subject the latter to the absolute control of the former, even in regard to the regulations councils are authorized to adopt, wisely provided, in the 12th section, that " in all cases where any dispute shall arise between such corporations and the authorities of any city . . . . . through or over whose highways . . . . . pipes are to be laid, as to the manner of laying the pipes and the character thereof, with respect to safety and public convenience, it shall be the duty of the Court of Common Pleas of the proper county upon petition of either party to the dispute, upon a hearing to be had, to define by its decree what precautions, if any, shall be taken in the laying of pipes, and by injunction to restrain their being laid in any other way than as decreed.   It shall be the duty of the court to have the hearing and make its decree with all convenient speed and promptness.   Either party shall have a right to appeal therefrom, as in cases of equity, to the Supreme Court, but the appeal shall not be a *supersedeas* of the decree ; and proceedings shall be had in like manner, upon like petition, when and as often as any dispute arises, as to pipes already laid, to define the duty of such corporation as to their re-laying, repair, amendment or improvement."

By virtue of the authority vested in it by this section, the court below, under the bill as amended, proceeded to hear and determine disputes which arose between appellant and appellee ; first, as to whether the assent of the former, as contemplated by the 13th section, had been given, and secondly, as to the reasonableness or legality of certain provisions contained in the ordinance of August 10th, 1885, entitled " An ordinance, Regulating the manner of laying pipes through, over or under the streets, lanes and alleys of the city of Pittsburgh, to be used in carrying, transporting, and supplying natural gas," etc, and the Ordinance of December 29th, 1885, entitled " An Ordinance, Granting to corporations, whose purpose it shall be to furnish natural gas for heat and light to the public of the city of Pittsburgh, the right to lay pipes through the streets, lanes, roads and alleys of said city for the conveyance and distribution of gas."

The question of assent arises upon the construction of the latter ordinance. The other question arises under both ordinances in connection with the facts found by the learned Master and approved by the court.

The first section of the Ordinance of December 29th, 1885, declares, " That all corporations supplying natural gas within the limits of the city, now or hereafter duly organized under the provisions of an Act . . . . . approved May 29th, 1885, and also all corporations whose purpose it shall be to supply natural gas to the public in the city of Pittsburgh, for illuminating purposes, (either in its natural condition or after treatment in order to better fit it for use as an illuminant) shall have the privilege of opening any street, lane, road or alley, within the limits of said city, and of laying down pipes for the purpose of conveying and distributing gas, with necessary street boxes and valves, and with the further privilege of making necessary connections for consumers, subject however to all the provisions of an ordinance of said city approved August 10th, 1885."

This ordinance is general, applicable to appellee as well as other companies, and the court below rightly construed it to be an unqualified grant of assent such as is required by the 13th section of the Act, subject only to such reasonable regulations as Councils are authorized by the 11th section to adopt.

The grant of assent, it is true, is expressly subject to all the provisions of the ordinance of August 10th, 1885; but, this means nothing more than that the provisions of the ordinance, so far as they are reasonable and proper regulations, shall be binding on the companies in the exercise of their corporate rights within the city. The second section of the ordinance of December 29th, declaring that " the privileges granted shall be enjoyed . . . . . only upon the following conditions," means substantially the same thing. While the word, " assent," is not used in the first section of the ordinance, the language employed necessarily implies the assent required by the 13th section of the Act, and hence the phrase " privileges granted " can refer to nothing else than the assent of councils given by necessary implication in the first section of the Ordinance. The word " conditions " in the second section is used in the sense of regulations and not conditions precedent. This is further shown by the language employed in paragraphs A, B, C, and D, of same section which is predicated of assent previously granted in the first section. But, if this is not so, and the provisions contained in these paragraphs and other sections of the ordinance are to be regarded as conditions precedent, they are inoperative and void, except in so far as

they are reasonable and proper regulations, such as Councils, under the limited authority delegated to them, are authorized to adopt.

The City Councils have no power to legislate upon condition. If authority to deal with the entire subject of natural gas and its introduction into the city for heating and illumina- ing purposes had been delegated to them by the legislature, there might be some room for the contention that Councils might couple their grant of assent with conditions. But no such authority was given. As we have seen, it is obvious on reading the Act in question that two things only were delegated to Councils : first, the power to give or withhold assent to enter upon the city streets ; and second, the right to adopt regula- tions, the reasonableness of which is virtually declared to be a judicial question. Any attempted legislation on the subject, outside of these matters, is *ultra vires,* a mere usurpation of authority never delegated to them. We conclude therefore that the grant of assent is valid, but the so called conditions precedent, if they be so regarded, are null and void.

Councils having given the required assent, the next question is, whether in view of the facts found by the learned master, the court erred in deciding that some of the provisions of each ordinance are *ultra vires,* and others are unreasonable and im- proper. On that branch of the subject the report of the Master and opinion of the learned judge of the Common Pleas are so satisfactory and conclusive that the decree complained of needs no further vindiction.

In the latter portion of the opinion the obnoxious portions of each ordinance are referred to in detail, and the reasons for holding some of them illegal and void are so fully given by the learned judge that further elaboration is unnecessary. He is clearly right as to all of them, except perhaps one or two of minor importance, and as to these we are by no means convinc- ed that there is any error.

In view of the limited authority delegated to councils by the Act of May 29th, 1885, some of the so called regulations which the court pronounced illegal and void are extraordi- nary specimens of municipal legislation. It is difficult to ac- count for them on any theory that is not incompatible with the public welfare and the duty which councils owe to their constitu- ents. One of them is the provision evidently designed to deprive natural gas companies of the right of appeal to the Court of Common Pleas, expressly given by the Act of Assem- bly. This is attempted by making Councils themselves a court of final resort, and exacting from the companies a bond in $100,000, binding them to submit to the judgment of that self- constituted tribunal. It requires no argument to show that

[Malloy v. Reinhard]

such a provision as this is a palpable usurpation of authority. But, it is not our purpose to notice, in detail, those provisions of the ordinances, which have been adjudged illegal and void. On that subject the opinion of the court below is sufficiently full and specfic.

It has been urged that if some of the so called conditions and regulations are pronounced illegal and void, the granting clause of the Ordinance of December 29th, 1885, cannot stand. This position is untenable, especially in view of the revisory jurisdiction given to the Court of Common Pleas by the Act of May 29th, 1885. As we have already seen, there is no such necessary connection between the title and granting section of the ordinance, and the provisions that are declared illegal and void, that the former must fall with the latter. One section of an ordinance may be declared reasonable and valid, while another section of the same ordinance may be pronounced unreasonable and void: Commissioners v. Gas Company; 12 Pa. St., 318.

> Decree affirmed and appeal dismissed, and it is ordered that the costs of this appeal be paid by the appellant.