# Allegheny *v.* Millville, Etna & Sharpsburg Street Ry. Co., Appellant.

*Street railways—Consent of municipality—Constitution, art 17, sec. 9—Act of May 14, 1889.*

Under article 17, § 9, of the constitution of 1874, which provides that "no street passenger railway shall be constructed within the limits of any city, borough or township without the consent of its local authorities," neither the legislature nor the courts can trespass upon the discretion given absolutely by the constitution to the local bodies.

The act of May 14, 1889, § 15, P. L. 217, which repeats § 9, art. 17, of the constitution, neither enlarges nor diminishes the constitutional powers of the local authorities.

*Condition of municipal consent.*

A municipality, in granting to a street railway company the privilege of using streets, may impose conditions under which the right may be enjoyed by the company. Pittsburgh's Appeal, 115 Pa. 4, distinguished.

*Regulation of fares—Tax on dividends.*

A municipality may require, as a condition of its consent to the use of streets by a street railway company, that a certain designated rate of fare shall be charged, and that a certain per cent of the dividends shall be paid to the municipality.

*Consent of municipality—Ordinance—Condition precedent.*

Where an ordinance provides that "this ordinance shall not go into effect until the company shall accept the same by its proper officials," the conditions of the ordinance are conditions precedent, and the ordinance cannot become effective until they are performed in their entirety. No amount of hardship or impossibility or illegality will avoid the bar of a condition precedent unperformed.

Argued Nov. 14, 1893. Appeal, No. 307, Oct T., 1893, by defendant, from decree of C. P. No. 2, Allegheny Co., Oct. T., 1893, No. 540, awarding injunction. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and THOMPSON, JJ.

Bill in equity for injunction.

The bill averred: That the city of Allegheny passed an ordinance, duly approved Aug. 12, 1893, at the solicitation of defendant company, with the object of enabling that company to construct and operate a street railway within the city's limits.

That one of the provisions of said ordinance is, " This ordinance shall not go into effect until the company shall accept the same by its proper officials, covenanting at the same time that a failure to comply with its provisions shall work a revocation of its privileges by said ordinance granted; said acceptance shall be filed within thirty days after the approval of this ordinance by the mayor of the city."

That defendant company did not accept the ordinance within the thirty days prescribed, and that the grant made thereby expired by limitation; that the railway company, notwithstanding its nonacceptance of the ordinance and the expiration thereof, commenced the construction of its road by laying its tracks within the corporate limits of the city of Allegheny without warrant or authority. The bill prayed that the defendant company be enjoined from proceeding with the construction of its road and be decreed to restore the streets to their former condition.

The answer, as amended, admitted the passage and approval of the ordinance as alleged in the bill, but denied that it solicited the passage of the ordinance. Defendant averred in the answer that certain provisions of said ordinance, as passed by councils of the city of Allegheny, were illegal and unreasonable, and enacted by said city without authority of law, which provisions are as follows: So much of section 3 which reads as follows, viz.:

" The rate of fare for carrying a single passenger from the city line to Pittsburgh, between the hours of 5 o'clock A. M. and midnight, shall not exceed the sum of 5 cents; and between the hours of midnight and 5 o'clock A. M. shall not exceed the sum of 10 cents; and in case said Millville, Etna & Sharpsburg Street Railway Company shall be consolidated or merged with another company, having a terminus in Pittsburgh, then the rate of fare shall remain as herein fixed between said line and said terminus."

And so much of section 6 of said ordinance as reads as follows, viz.: " And 5 per centum of the dividends declared shall be paid to the city of Allegheny."

That the provision that the ordinance should be accepted within thirty days was contained in the ordinance was admitted by the answer. Defendant then averred that it had accepted

the ordinance on Sept. 5, 1893, within the time limited by its provisions; that the acceptance was under the corporate seal of the company and duly delivered to the comptroller of Allegheny on Sept. 5, 1893.

By the acceptance the company rejected, as illegal and void, the parts of the ordinance included in sections 3 and 6, as above.

Defendant continuing averred that it had accepted the ordinance and was constructing its railway with due and legal authority, and prayed that the bill be dismissed.

The court, after final hearing on bill, answer and affidavits, awarded the injunction prayed for, in an opinion by WHITE, J.

*Error assigned* was decree, quoting it.

*W. B. Rodgers*, *F. M. Magee* and *A. M. Neeper* with him, for appellant.—The conditions of the ordinance were illegal: People v. Barnard, 48 Hun, 57; Pittsburgh's Ap., 115 Pa. 21; Minnesota v. R. R., 134 U. S. 418.

The first section of the ordinance is a full and complete grant of consent, and the provisions in controversy, being illegal and void, fall, but the consent stands.

An ordinance may be good in part, and bad in part; one section may be declared reasonable and valid, while another may be declared unreasonable and void: Commissioners v. Gas Co., 12 Pa. 318; Pittsburgh's Ap., 115 Pa. 25; Eldora v. Burlingame, 62 Iowa, 32; Kettering v. Jacksonville, 50 Ill. 41: Kings Co. R. R., 105 N. Y. 97.

*John S. Ferguson*, *George Elphinstone* with him, for appellee.—The precise question under consideration has not arisen in this state, but it has arisen in New York. Under the constitution of New York a similar provision to that contained in the constitution of Pennsylvania exists with an additional requirement. In that state no street railway company can occupy the streets in a city without the consent of the local authorities, and without the consent of a majority of the property owners abutting upon the street to be affected: People v. Barnard, 110 N. Y. 548.

Similar provisions, under which the Federal Street & Pleasant Valley Passenger Railway was granted permission to go

upon the streets of Allegheny City, were sustained as proper and reasonable in the case of that company against the city of Allegheny, reported in 14 Pitts. L. J. 259, N. S. It is true that in that case the company accepted the ordinance, but the case is authority nevertheless to sustain the proposition that in the conditions complained of here there is nothing per se illegal or unreasonable.

In ten states, constitutional provisions have been adopted depriving the legislature of the power to grant the right to construct and operate street railways in any city, town or village, without the consent of the local authorities. These states are: Alabama, Colorado, Illinois, Missouri, Montana, New York, North and South Dakota, Pennsylvania and Texas: Booth on Street Railways, § 29.

A municipality whose consent is necessary to the construction of a railway in a public street may impose such conditions as it may think necessary, and such conditions are binding: Phila. v. R. R., 3 Grant, 403; Davis v. Gray, 16 Wall. 231.

The fact that the performance of the condition upon which a railroad has obtained a right to construct its road would involve such an enormous expense as to be unreasonable, constitutes no excuse for failing to do so: Queen v. Scott, 3 Q. B. 543.

If a corporation takes the benefit of an ordinance, it accepts its conditions throughout: Charles River Bridge v. Warren Bridge, 24 Mass. 344; Bank of the United States v. Dandridge, 12 Wheat. 64; Detroit v. Ry., 37 Mich. 558.

The case of Kings County Elevated Ry. Co., 105 N. Y. 97, is not a case under the New York constitution.

OPINION BY MR. JUSTICE MITCHELL, December 30, 1893.

By sect. 9, art. 17 of the constitution, "no street passenger railway shall be constructed within the limits of any city, borough or township without the consent of its local authorities." This language is repeated in sect. 15 of the street railway act of May 14, 1889, P. L. 217, but this is merely an express subjection ex majori cautela, of the privileges to be granted by the act, to the terms of the constitution, which would be implied without it. It neither enlarged nor diminished the constitutional powers of the local authorities, and may therefore be dis-

regarded.   The provision of the constitution is peremptory and unlimited.   It is part of the pervading intent of that instrument to give local bodies the control of local affairs.   The public history of the time, of which the court may take judicial notice, shows that one of the prime objects of the people in calling a constitutional convention was to do away with special legislation which interfered with local affairs, or granted privileges to particular bodies and withheld them from others, with a semblance of partiality rather than of equal favor to all.   That object was carried out in the constitution adopted, so broadly that it is a matter of grave doubt whether the object itself has not sometimes been defeated by tying the hands of the legislature too closely to permit it to help special localities with special needs by legislation which they really want and ought to have.   But however that may be in other matters, the provision now under consideration, as already said, is peremptory and without expressed limitations of any kind.   It is a gift directly from the constitution to the local bodies, and needs no help, nor permits any interference from the legislature.   If any limitations are to be implied by the courts, the implication must arise from clear necessity, as absolute, as peremptory and as unavoidable as the constitutional mandate itself.   The burden therefore is on the party affirming that the exercise of the local authority is not valid.   *Omne majus in se continet minus.* The man who can give the whole can give part, or who can grant absolutely can grant with a reservation of rent or other condition.   He who can consent or refuse without reason, does not make his consent or his refusal either better or worse by a good or a bad reason.   The same principle applies to the present subject.   It is conceded that the local authorities may impose some conditions, such as those relative to the police power, but where is the grant to any other body to supervise and limit the conditions, or say what they shall be?   The legislature clearly cannot do it.   The very purpose of the provision was to put an end to the legislature's interference.   Nor can the courts trespass upon the discretion given absolutely by the constitution to the local bodies.   We do not undertake to say that no condition could possibly be attached to consent, which would be an abuse of or transcend the discretion given. A condition, conceivable for the purpose of illustration, that

the members of council voting for the consent should have perpetual free passes, or other gratuities, might be declared void as against the fundamental principle of the purity of the administration of public affairs for the public benefit. But even then the question would remain whether the consent was not void, as well as the condition on which it was given. But it would require a very clear case of the contravention of some controlling and paramount principle of public policy, to justify an interference by the courts to put a limit on the unlimited constitutional grant.

There is nothing of that kind here. There is nothing illegal in the conditions as to the rate of fares, or the taxation of the dividends. The legislature could have imposed both as conditions to the grant of the charter, or could have delegated that power to the cities as a condition of their consent. If the authority would have been legal on a delegation from the legislature, a fortiori it cannot be illegal on a grant from the constitution. Neither the constitution nor the legislature has in fact conferred such power on the cities, but the illustration holds good to show that there is nothing in the conditions imposed by the city of Allegheny, intrinsically opposed to the law or to public policy. It is not a question of the municipality's power to regulate fares or tax dividends. There is no contention for that. If the city was assuming such authority as against the railway company, the argument for appellant would be of convincing force. But the city is not doing so. It simply says, " I have the sole and exclusive power to consent or refuse; on certain conditions I consent, otherwise I refuse; I don't compel you to do anything, I merely give you a choice between alternatives; you have no power or right to demand my consent, you ask it, and I give it on my own terms or not at all."

Nor can we see that there is anything unreasonable in these conditions, even if that matter were within our province. A valuable franchise, to use public property, the streets, for corporate profit, is about to be granted. It is not illegal or unreasonable that the public or the city which represents it should have a consideration for the privilege that it confers. If it were a right of passage over private property, there would be no question about it, and the right could not be got in any other

way.    We see no reason why the public interest should not be promoted by requiring special privileges in the public property to be paid for in the same way.    It is matter of general knowledge that the street railways in the city of Baltimore pay part of the fare of every passenger into the city treasury for the development and care of Druid Hill Park, and we learn from the report of People ex rel. v. Barnard, 110 N. Y. 552, that by an act of 1886 in New York, municipalities are obliged to put up their consent to the construction of street railways within their limits, at auction, and award it to " the bidder who will agree to give the largest per centage per annum of the gross receipts."    The constitutional provision in New York is closely similar to our own.    Whether the legislature could prescribe that the consent of the local authorities in this state could only be given on such condition we express no opinion about, as it is not before us.    But it would certainly be no cause of complaint if our own legislators, general or local, should look as closely after the pecuniary interests of the public involved in the grant of franchises.    How valuable they may be is illustrated by that case which shows that in the city of Buffalo the successful railway at the auction agreed to pay thirty-six per cent of the gross receipts every year for the privilege.

The conclusion thus reached is so clear upon indisputable principles that it does not require aid from authority, but it is in fact supported by the exactly similar case already cited from 110 N. Y. 552, and by our own decision in Federal St. R. W. Co. v. City of Allegheny, 14 Pitts. Legal Journal, N. S. 259. In the latter case the city, in 1870, without authority either constitutional or legislative to tax, but under the proviso in the charter of the railway that no street should be occupied without consent, made its consent conditional on the payment of a car tax, and a per centage of the dividends, into the city treasury.    The company accepted the ordinance, paid the car tax, but refused to pay the percentage on dividends, upon substantially the same grounds as the appellant relies on here. The court however gave judgment against it, saying, inter alia, " The policy of our legislation has been to make the passenger railway companies pay the municipalities for the use of the streets. . . . It is said the city has no power to impose such conditions when giving its consent to the use of the streets. . . .

The act (charter) gave the company no power to move a stone or lay a rail on any street of the city without the consent of the councils. *The act imposed no restrictions on the city.* The councils could refuse absolutely their consent and the company had no redress." The proviso of the act of 1878 (in the words of the constitution as to consent of the local authorities,) "is a condition precedent. The power of the municipal authority to give or refuse consent is unlimited and unqualified. That necessarily implies the power to impose reasonable conditions in giving their consent. *If they impose unreasonable conditions all the company can do is to refuse to accept.*" This court affirmed the judgment on the opinion of the court below. The case is really stronger than the one in hand, because, although the company had accepted the ordinance of consent with its conditions, yet the case having arisen under a charter and ordinance prior to the present constitution, the municipal authority to impose conditions, and their consequent validity, rested only on the powers permitted to it by the legislature, and not as here on a paramount constitutional grant.

There is a wide difference between the present case and Pittsburgh's Appeal, 115 Pa. 4. The contention there was over the rights of a natural gas company in the streets of the city. As to that subject the legislative control of the streets was complete, and the city had only such authority in regard thereto as the legislature chose to allow it. This court held that the legislature having invested the gas company with the right of eminent domain, and provided only that it should get the assent of the city and be subject to "such regulations as the councils may adopt," the city's legislative power over the subject was limited and did not extend to any conditions to be attached to its consent, except such as were reasonable regulations of the mode of carrying out the statutory powers of the corporation.

The conditions in the present case being within the power of the city to prescribe, and therefore entirely valid, the other question raised becomes unimportant. It may be well to say however that the ordinance of consent was an entirety, to be accepted or refused just as it was, and acceptance was expressly made a condition precedent. Nothing therefore could make the ordinance a consent but the performance of the condition, the acceptance of the whole. Even if any part of the condi-

tion was impossible or ultra vires the result would only be that the consent could never become effective.   No amount of hardship, or impossibility, or illegality, will avoid the bar of a condition precedent unperformed: Co. Litt. 206 ; 2 Blackst. 157.

Decree affirmed.