## City of Philadelphia, Appellant, *v.* Empire Passenger Railway Company.

*Street railways—Duty to repair streets—Municipal control—Act of February 10, 1869.*

The act of February 10, 1869, P. L. 130, incorporating the Empire Passenger Railway Co., provides as follows: "The said company is hereby authorized and empowered to construct and lay the said railway without obtaining the consent of the city councils of the city of Philadelphia; but whenever the said railway shall be laid and used by running passenger cars thereon, the said company shall be subject to the ordinances of the city of Philadelphia regulating the running of passenger railway cars." *Held,*

(1) that the company was not liable under the city ordinances requiring street railway companies to pave streets; (2) that the ordinances referred to by the act were such as merely regulated the running of cars by prescribing the frequency with which cars should be run, the rate of speed, the protection of the public at crossings, and similar subjects.

Argued April 10, 1896.   Appeal, No. 223, Jan. T., 1896, by plaintiff, from judgment of C. P. No. 4, Phila. Co., June T., 1893, No. 71, for defendant, non obstante veredicto.   Before STERRETT, C. J., GREEN, WILLIAMS, DEAN and FELL, JJ.   Affirmed.

Assumpsit to recover the cost of repaving streets.   Before THAYER, P. J.

At the trial it appeared that the city claimed to recover the costs of repaving certain streets occupied by the defendant company with its tracks.

The court directed a verdict for the plaintiff, reserving a point framed by agreement as follows:

" Whether as a matter of law the company defendant is liable for the re-paving of streets upon which are located its tracks under the following agreed upon facts:

" The said streets were paved with cobble stones, which paving was out of repair, and which cobble stone paving could have been repaired.   The city, however, in the proper exercise of its discretion to re-pave, determined to re-pave said streets with Belgian block, because in its judgment such mode of paving was more adapted to the public use than cobble stone paving; this re-paving was not rendered necessary on account of the laying of the tracks of the company defendant.   The city duly notified the company defendant to re-pave.   It refused to do so. The city thereupon did the work at the cost shown by the bills included in the statement of claim, which are admitted to be reasonable and correct in amount.

" It is further agreed that all acts of assembly and ordinances of councils relevant to the issue shall be considered in determining the liability of the defendant."

Verdict for plaintiff for $25,795.86.   Judgment was entered for defendant non obstante veredicto.   Plaintiff appealed.

*Error assigned* was entry of judgment non obstante veredicto.

*E. Spencer Miller* and *James Alcorn*, assistant city solicitors, with them *John L. Kinsey*, city solicitor, for appellant.—In the absence of a clear expression upon the part of the legislature, indicating a purpose to exempt these lines of passenger railway from the usual obligation to keep the streets in repair, it must be inferred that the legislature had no such intention: Phila. v. Thirteenth & Fifteenth Streets Pass. Ry., 169 Pa. 269; Phila. v. Ridge Ave. Pass. Ry., 124 Pa. 219; Allegheny City v. Millville Pass. Ry., 159 Pa. 411.

A passenger railway company, or any other corporation operating within the city of Philadelphia, is a subject of the municipal government, and liable as such to the lawful ordinances thereof: Frankford & Phila. Pass. Ry. v. City, 58 Pa. 119; Johnson v. Phila., 60 Pa. 445.

*Ellis Ames Ballard* and *John G. Johnson*, with them *Rufus E. Shapley*, for appellee.—The legislature knew how to subject a company generally to the power of councils. In six separate charters passed before this one the legislature had expressly named the general ordinance of 1857, and had made it in each of those cases a part of the company's charter. In many cases the company was subject to "all ordinances of the councils of the city." In some cases the words are, "all ordinances regulating city passenger railways in said city." The legislature also knew how to prevent street railway charters from being unduly regulated and restricted by the city. The general act of April 11, 1868, P. L. 849, which confirmed to the city the right to raise revenue by a license of $50.00 imposed on passenger railway cars, contains this provision: "And said city shall have no power by ordinance or otherwise to regulate passenger railway companies, unless authorized so to do by the laws of this commonwealth expressly in terms relating to passenger railway corporations in the city of Philadelphia."

One year after this general enactment the charter of this appellee was granted, and the intention to restrict the city's power to the regulation of the running of the cars is plainly shown.

OPINION BY MR. JUSTICE WILLIAMS, October 5, 1896 :

The defendant was incorporated by a special act of legislature approved on the 10th day of February, 1869. By the provisions

of this act it was authorized to enter upon the streets of the city of Philadelphia, and construct its line of railway over the route described in its charter "without obtaining the consent of the city councils of the city of Phila." The right of eminent domain was not only conferred, but the place and manner of its exercise were determined by the state as the sovereign, regardless of the will of the municipality. If the consent of the city to the occupation of its streets had been necessary, the terms and conditions upon which that consent should be granted would have been for the city to determine. Acceptance of the permission to enter upon the streets would then have involved an assent on the part of the company to all the terms and conditions imposed, which the courts would have enforced: Allegheny v. Millville, Etna & Sharpsburg Ry. Co., 159 Pa. 411. But the consent of the city was not made necessary; the company was authorized to construct its railway without it. The city was in no position to impose terms; it had no power to do so. We must look therefore to the special legislation incorporating and defining the powers and privileges of the railway company for the terms of the grant to the defendant, and the extent of its obligations to the city. Examining the special legislation for this purpose we find that the company was required in the construction of its railway to conform to the established grade of the streets it should occupy; to lay crossings on those streets not oftener than one in each two hundred and fifty feet; and to do such repairing as became necessary on account of the laying of its tracks at its own cost and without cost to the city. These were all the terms imposed relating to the location and construction of the track of the railway company; but "whenever the said railway shall be laid and used by running passenger cars thereon" an additional obligation arose, which was expressed by the legislature in these words, "the said company shall be subject to the ordinances of the city of Phila., regulating the running of passenger railway cars." Our question is, what is the extent of the obligation imposed by this provision? It is clear that it does not relate to the right to enter the streets of the city and construct its railway thereon, for it is limited by its terms to take effect only when the track was laid and in actual use by the running of cars over it. The railway was to be built under the authority of the state, not of the

city. But after this was done it was to enjoy no immunity from municipal control. It must, as to the operation of its railway, be subject to the ordinances of the city regulating the "running of passenger cars." The distinction is plainly drawn between the building of a line of street railway, and the operation of a completed line.

The ordinances to which it is made subject are those that "regulate the running of cars" upon a completed road rightfully upon the streets, and nothing more. The frequency with which cars shall be run, the rate of speed, the protection of the public at crossings, and similar subjects, are those that are within the purview of the act. As to all such subjects which are within municipal control, the defendant stands on the same ground as do other street railways of the city, and is subject to the ordinances "regulating the running of passenger railway cars" in the same manner, and to the same extent. This is the extent of the obligation imposed by the statute on the defendant company and the power of the city over it; it follows that the assignments of error must be overruled.

The judgment is affirmed

