<hr />

JOHN J. BYRNE

*v.*

THE CHICAGO GENERAL RAILWAY COMPANY *et al.*

*Opinion filed nunc pro tunc as of October 14, 1897.*

1. MUNICIPAL CORPORATIONS—*city may impose conditions on use of streets by street railway.* The city council, in granting the use of streets to a street car company, may prescribe such conditions as in its opinion public interests require; and courts will not interfere with the exercise of its discretion, in the absence of abuse or fraud.

2. SAME—*city may impose annual license fee on cars used by street railway.* The city council may, by the ordinance granting the use of streets to a street car company, impose an annual license fee upon each car used by the company, and upon accepting the terms of the ordinance the company is bound to perform its conditions.

3. SAME—*stockholder cannot enjoin payment or collection of license fee.* A stockholder in a street car company cannot enjoin the collection by a city, nor payment by the company, of an annual license fee imposed by the ordinance granting the use of the streets to the company.

4. SAME—*contribution to city government inures to benefit of public.* Payment by a street car company, to a city, of an annual license fee is a contribution to the government of the city which inures to the benefit of the public, as the government exercised by a city is exercised as an agency of the whole public.

*Byrne* v. *Chicago General Ry. Co.* 63 Ill. App. 438, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on writ of error to the Superior Court of Cook county; the Hon. THEODORE BRENTANO, Judge, presiding.

Jesse B. Barton, for appellant:

A street railway company is a common carrier of passengers for hire, and as such is subject to all the rules of law relating to common carriers, and among these is the one that prevents it from charging more than what is reasonable for its services. *Railway Co.* v. *Williams,* 140 Ill. 275; *Railway Co.* v. *Engel,* 35 Ill. App. 491.

A street railway is *quasi* public in its character, and, like a general railway company, owes duties to the public which cannot be abridged by contract. *Railroad Co.* v. *People,* 132 Ill. 559; *Bestor* v. *Wathen,* 60 id. 138; *Linder* v. *Carpenter,* 62 id. 309; *Marsh* v. *Railroad Co.* 64 id. 414; *Railroad Co.* v. *Mathers,* 71 id. 592; 104 id. 257; *People* v. *Railroad Co.* 130 id. 175.

The city of Chicago, under its police powers, can impose license fees on street railway companies. *Allerton* v. *Chicago,* 6 Fed. Rep. 555; *Frankford Pass. Co.* v. *Philadelphia,* 58 Pa. St. 119; Rev. Stat. chap. 24, clause 42, sec. 62.

When a municipality, under its police powers, is authorized to require payment of a license fee, the same must be uniform upon all of the class licensed, and it may be sufficient to compensate for the extraordinary policing demanded by the carrying on of the occupation licensed. *East St. Louis* v. *Wehrung,* 46 Ill. 392; *Walker* v. *Springfield,* 94 id. 364; *Braun* v. *Chicago,* 110 id. 186; *Wiggins Ferry Co.* v. *East St. Louis,* 102 id. 560; *Cemetery Ass.* v. *Railroad Co.* 121 id. 203; Cooley's Const. Lim. (6th ed.) 200, 201; *Cairo* v. *Feuchter Bros.* 54 Ill. App. 112; *Zanone* v. *Mound City,* 103 Ill. 552.

A municipal corporation cannot grant for a private exclusive use any part of a street. The use must be for the public, though the trustee, or one who holds for the public use, may be private. *Moses* v. *Railway Co.* 21 Ill. 516; *Chicago Dock Co.* v. *Garrity,* 115 id. 155; *Field* v. *Barling,* 149 id. 556; *Railroad Co.* v. *Quincy,* 136 id. 563.

A municipality cannot contract except as it is authorized, and is confined in its sources of revenue to those

enumerated in its charter.   *Mather* v. *Ottawa*, 114 Ill. 659; *Cairo* v. *Bross*, 101 id. 478; *Twining* v. *Elgin*, 38 Ill. App. 356; *Chicago* v. *McCoy*, 136 Ill. 344; *McKinney* v. *Alton*, 41 Ill. App. 508; *Champaign* v. *Harmon*, 98 Ill. 491; *Aberdeen* v. *Honey*, 8 Wash. 251; *Gaddis* v. *Richland County*, 92 Ill. 119; *Herzo* v. *San Francisco*, 33 Cal. 134; *Jersey City, etc. Co.* v. *Jersey City, etc. Co.* 20 N. J. Eq. 61;  *Cook County* v. *McCrea*, 93 Ill. 238; *LaSalle County* v. *Simmons*, 5 Gilm. 513.

C. C. & C. L. Bonney, and Lyman M. Paine, (Elbert H. Gary, of counsel,) for appellee the Chicago General Railway Company:

The special ordinance under which the General Railway Company and its lessor have been operating their lines is not a mere license, but a contract between the city and the company, equally binding on both.   The rights acquired thereunder by the company are property. *Railroad Co.* v. *Railroad Co.* 32 Barb. 364; *People* v. *O'Brien*, 111 N. Y. 1; *Railroad Co.* v. *Delamore*, 114 U. S. 501; *Gas Light Co.* v. *Gas Light Co.* 115 id. 650;  *Gas Light Co.* v. *Town of Lake*, 130 Ill. 42; *East St. Louis* v. *Wehrung*, 46 id. 392.

The special ordinance was not *ultra vires*, but was clearly within the statutory powers of the city of Chicago.   2 Dillon on Mun. Corp. (4th ed.) sec. 706; Elliott on Roads and Streets, 565; Rev. Stat. chap. 66; *Hunt* v. *Railway Co.* 121 Ill. 638.

The railway company, and appellant also, are estopped to deny the validity of the special ordinance.   *Wiggins Ferry Co.* v. *East St. Louis*, 102 Ill. 560; *Schwuchow* v. *Chicago*, 68 id. 444;  *Launder* v. *Chicago*, 111 id. 91.

William G. Beale, Corporation Counsel, and George A. Dupuy, Assistant, for appellee the city of Chicago:

Courts will not undertake to control the judgment or discretion of a public officer, where the law invests him with the exercise of his judgment and discretion in the discharge of his public duties.   *People ex rel.* v. *Kent*, 160

Ill. 655; *People* v. *Dental Examiners*, 110 id. 180; *Kelly* v. *Chicago*, 62 id. 279; *People* v. *Breman*, 39 Barb. 653; *People* v. *Duchess*, 20 Wend. 658.

Mr. Justice Magruder delivered the opinion of the court:

The following, with a few omissions, is the opinion delivered by the Appellate Court in deciding this case:

"The plaintiff in error is a stockholder in the Chicago General Railway Company, and filed this bill for an injunction to restrain the city of Chicago from compelling said General Railway Company to pay any sum or sums of money computed or to be computed under section 7 of a special ordinance of the city of Chicago, passed February 8, 1892. To his bill defendants in error separately demurred, and such demurrers having been sustained, the bill was dismissed for want of equity. The correctness of that decree of dismissal is called in question.

"The Chicago General Railway Company is, and has been since April 3, 1894, an operator of all the lines of street railroads constructed and operated by the West and South Towns Railway Company under two special ordinances of the city of Chicago granting the right to said Towns Railway Company to lay down and operate a street railway upon certain of the city streets, and passed, respectively, February 8, 1892, and April 5, 1893. Said section 7 is a part of the said special ordinance passed February 8, 1892, and is, together with sections 8 and 12 of the same special ordinance, as follows:

" '7. The said company shall pay into the city treasury of the city of Chicago, for the use of said city, the sum of fifty ($50) dollars as an annual license fee for each and every car used by said company, in the manner following: In computing the number of cars upon which said license charge may be imposed, thirteen round trips, when the car is used in the transportation of passengers, shall be taken as equivalent to one day's use of one car; one-

thirteenth of such round trips during each quarter shall be divided by the number of days in such quarter, such quotient shall be the number of cars subject to such license fee: *Provided, however*, that such cars shall not already be liable for the payment of a license fee on one or the other lines of this company or its connections.   The president or other chief officer of said company shall, under oath, make report quarter-yearly to the comptroller of the city of Chicago of the whole number of cars so run by said company, and at the same time pay to said comptroller twelve and one-half ($12.50) dollars for each car, to be ascertained as above prescribed in this section. The first quarter shall begin on the first day upon which the said company shall run a car or cars for the carriage of passengers.

" '8.  The rights, privileges and franchises herein conferred are granted upon the further condition and consideration, that on and after December 1, 1895, the said company or their legal assigns, or any person, firm, company or corporation in any way claiming under or through them, or operating the road herein authorized, shall pay into the city treasury of the city of Chicago, annually, for each and every lineal mile of their track laid under the provisions of this ordinance, and a proportionate amount for any fraction of a mile laid as herein authorized, the sum of five hundred ($500) dollars.   The payments under the conditions herein prescribed shall be due and payable on the first day of December of each year, and the first payment due, as herein prescribed, to be made on the first day of December, 1896.

" '12.  The franchises granted by this ordinance, except as herein specially provided, are granted subject to all general ordinances of the city of Chicago concerning horse railroads now in force or which may hereafter be passed by said city under its police powers. '

"And section 2 of the said special ordinance of April 5, 1893, contained the following provision, to-wit: 'All cars

run on said line shall pay an annual license fee of fifty ($50) dollars for each year, to be computed as provided in said ordinance of February 8, 1892.'

"In addition to the provisions so quoted from said special ordinances, under which the Towns Railway Company, the lessor of the General Railway Company, obtained the right to lay down tracks and operate a street railway, there is and was at the time of the passage of said two special ordinances, and had been for many years before that time, a general ordinance of said city in force (section 1506 of the Municipal Code) concerning license fees to be paid by the operators of street railway cars, as follows:

" 'It shall be the duty of every person, firm or corporation engaged in the occupation of operating and running street cars for the conveyance of passengers upon any line of horse or city railway within the city of Chicago in the month of April of each year, to apply for and obtain from the city of Chicago a license therefor, for which said license every such person, firm or corporation shall, at the time application is made for such license, pay into the treasury of said city the sum of $50 for each car operated and run or proposed to be operated and run by such person, firm or corporation during the year. Any person, firm or corporation engaged in the occupation aforesaid, failing or refusing to take out a license therefor, as above required, shall be subject to a fine of not less than $5 and not more than $200; and a failure to obtain such license for each day that the same shall continue shall be deemed a separate and distinct offense and violation of this article.'

"Besides alleging the facts so set out, the bill alleges, as set forth in the abstract, as follows: 'That besides said defendant company there are six or more separate and distinct corporations, each operating separate and distinct lines of street railways along the streets within the corporate limits of Chicago, under ordinances some

of which contain sections similar to those above quoted from the ordinances of February 8, 1892, and April 5, 1893, and some making no mention whatever of licenses or license fees; that since April 3, 1894, said Chicago General railway has computed license fees to be paid into the city treasury, not on the basis of the actual number of cars run, but upon the basis of the number of trips made by all cars of said company; that said company is at all times liable, in law, to pay a license fee under said section 1506 of the Municipal Code, and the same is not waived, liquidated or satisfied, in whole or in part, by any payments made under section 7 of the ordinance of February 8, 1892, wherefore any payment not made in pursuance of said general ordinance is a misappropriation of the funds of said company; that said company owns thirty-three cars, and operates or proposes to operate them on said lines, and should have paid as license fees therefor $1650, and is still liable therefor; nevertheless, regardless of the complainant's protests and remonstrances, it now threatens to pay to said city $250, computed to be one quarterly installment under said section 7, and will pay the same unless restrained, whereby the funds of said company will become unlawfully misappropriated and wasted, to the injury of complainant as a stockholder.'   And the prayer of the bill is, that said section 7 of said special ordinance of February 8, 1892, be declared *ultra vires* and void, and that the city be perpetually enjoined from compelling payment of any sum computed or to be computed under said section 7, and for general relief.

"The question so presented is, whether the special ordinances referred to are valid corporate acts of the city of Chicago, and binding upon the railway company.   Of that, we do not think there can be much doubt.   It is too late to deny to the city the power to grant privileges * * * to street railway companies to lay down tracks and operate them in and along the streets of the city,

or the power of such companies to agree with the city concerning the terms upon which they will accept such privileges.

"The ordinances, of which the quoted sections were a part, constitute the authority under which the railway company laid its tracks and operates its cars, and section 7 was one of the terms to which the company agreed when it accepted the ordinances. * * * The city was not limited to a simple denial or granting of the privilege, but might prescribe the terms upon which the privilege should be conditioned, if conferred; and by accepting the ordinances so burdened with terms, the railway company became bound to pay the license fee so long as it enjoys the privileges conferred by the ordinances. (2 Dillon on Mun. Corp. (4th ed.) sec. 706.) And a license fee could properly be exacted by the city. * * * (Elliott on Roads and Streets, 565).

"It would be most unjust to hold that the city, having the power to either confer or refuse the privilege, and having exercised the power upon terms accepted by the grantee, and long acted upon, should be denied enforcement of the terms. If on no other ground, the railway company should be prevented by the familiar doctrine of estoppel from escaping its liability to pay. And what would be denied to the company in such regard if it were the actor in these proceedings, should be denied to its stockholders.

"We do not consider it necessary to speak of the effect of these special ordinances upon the general section 1506 of the Municipal Code. * * * Whether the ordinances operated to repeal said section 1506 or operated to create an additional burden upon the company is not necessarily here involved. And the same might be said of the alleged fact concerning the terms upon which other companies were granted similar privileges. * * * A license was obtained by the railway company, and it does not matter whether the bargain that the particular company so ob-

tained was as good as that which some other companies, exercising similar privileges, enjoy, or not. There is nothing partaking of the element of taxation, or of the establishment of general license fees upon occupations, and therefore demanding uniformity, involved in this question.    *   *   *

"We see no ground upon which the decree should be reversed. It will therefore be affirmed."

So much of the opinion of the Appellate Court, as is above set forth, we concur in and adopt as the opinion of this court. Nothing, however, herein quoted or herein said is to be understood as affirming or denying the right of a city in this State, under the police power, to pass such a general ordinance, imposing a license fee, as shall be binding upon the street car companies using its streets, whether such companies consent to such ordinance or not. That question is not involved in this case.

The material point here decided is, that the use of the streets in the cities of this State by street car companies is subject to the consent of the common council, and that, in granting such consent, the common council may impose such conditions as, in its opinion, the public benefit may require. Under the constitution not even the legislature has the power to grant the right to construct and operate a street railroad within a city without the consent of its common council. Section 4 of article 11 of the constitution is as follows: "No law shall be passed by the General Assembly granting the right to construct and operate a street railroad within any city, town or incorporated village, without requiring the consent of the local authorities having the control of the street or highway proposed to be occupied by such street railroad." (1 Starr & Cur. Stat. p. 161).

Legislation has been passed in pursuance of this constitutional provision. Counsel on both sides refer to, and discuss, chapter 66 of the Revised Statutes, known as the Horse and Dummy act. (1 Starr & Curtis' Stat.

p. 1263). Section 4 of that act provides that "every grant to any such company of a right to use any street * * * shall be subject to the right of the proper authorities to control the use * * * to the same extent as if no such grant had been made, and to make all necessary police regulations concerning the management and operation of such railroad, whether such right is reserved in the grant or not." Section 3 of the act provides, that "no such company shall have the right to locate or construct its road upon or along any street * * * in any incorporated city * * * without the consent of the corporate authorities of such city. * * * Such consent may be granted * * * upon such terms and conditions, not inconsistent with the provisions of this act, as such corporate authorities * * · * shall deem for the best interests of the public."

As the consent may be granted upon such terms and conditions as the common council may *deem* for the best interests of the public, a certain discretion in determining what is for the best interest of the public is necessarily vested in the corporate authorities. So long as this discretion or judgment is fairly and honestly exercised, it is not the province of the courts to interfere. A different case might be presented where fraud or improper conduct is charged, but no such charge is here made. The "public" here mentioned may refer to the general public, and also to the inhabitants of the city. Questions in regard to the mode of operating the road, the frequency and speed with which its cars are run, the conveniences afforded by it for transportation, the safety of its management, etc., are questions which affect the whole public. But there is a sense, in which "the interests of the public" may include such interests as peculiarly affect the tax-payers and residents of the city. The city is but an agency of the State and governs, within its sphere, for the State. The title to the streets is held by the city in trust for the benefit of the general

public; and, in like manner, the government exercised by the city is exercised as an agency of the whole public, and for all the people of the State. A municipal corporation, like a State or county, is, within its prescribed sphere, a political power. "The city of" Chicago, "to the extent of the jurisdiction delegated to it by its charter is but an effluence from the sovereignty of" Illinois, "governs for" Illinois, "and its authorized legislation and local administration of law are legislation and local administration by" Illinois "through the agency of that municipality." (*Louisville* v. *Commonwealth*, 1 Duval, (Ky.) 297).

It follows, that any contribution from a street railroad company to the government of the city inures to the support of a public agency, exercising public functions and deriving its authority from the general sovereignty vested in the people of the State at large. It cannot be true, therefore, as is claimed by counsel for appellant, that a contribution from the appellee company to the support of the municipal government of Chicago is not in the interest of the public.

Where, as here, the constitution and general statutes of the State make the consent of the municipal authorities a condition precedent to the exercise of the right to construct and operate a railroad in the streets of a city, such authorities necessarily have the power to prescribe the conditions upon which they will grant their consent. They may impose any conditions not illegal and not forbidden by the statute. One of those conditions may be the exaction of a license fee for the use of the street. (Elliott on Roads and Streets, p. 565; 2 Dillon on Mun. Corp.—4th ed.—sec. 706).

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*