

# The Attorney General of Texas

November 30, 1978

JOHN L. HILL
Attorney General

Supreme Court Building
P.O. Box 12548
Austin, TX. 78711
512/475-2501

701 Commerce, Suite 200
Dallas, TX. 75202
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905
915/533-3484

723 Main, Suite 610
Houston, TX. 77002
713/228-0701

806 Broadway, Suite 312
Lubbock, TX. 79401
806/747-5238

4313 N. Tenth, Suite F
McAllen, TX. 78501
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205
512/225-4191

An Equal Opportunity
Affirmative Action Employer

Mr. Homer A. Foerster
Executive Director
State Board of Control
L.B.J. Building
Austin, Texas 78711

Opinion No. H- 1265

Re: Whether state agencies may pay the "special municipal tax or charge" on telephone bills.

Dear Mr. Foerster:

You ask whether state agencies may pay a "municipal franchise charge" which appears on telephone bills. Utilities frequently enter into franchise agreements with cities authorizing them to use the city's streets in exchange for the payment of a percentage of the gross receipts received for rendering services locally. The percentage of gross receipts paid to the city varies according to the individual agreement. The Public Utility Commission has required Southwestern Bell Telephone Company to file a tariff which provides that the municipal franchise charge will be passed on to the utility customers within the particular municipality. Telephone bills sent to state agencies now include a "special municipal tax or charge." You question whether this charge can be exacted from a state agency and ask whether it is actually a tax.

Article 1175, section 12, V.T.C.S., prevents telephone companies from using the streets or grounds of a home rule city without first obtaining the consent of the governing authorities and paying a prescribed compensation. Article 1181, V.T.C.S., details other conditions relating to the grant by a home rule city of a "franchise to use or occupy the public streets, avenues, alleys or grounds" of the city. Pursuant to these provisions, home rule cities may grant utility companies franchises to use the public streets in exchange for compensation measured by a percentage of gross receipts. City of Tyler v. Television Cable Service, Inc., 493 S.W.2d 322 (Tex. Civ. App. — Tyler 1973, writ ref'd n.r.e.); City of Weslaco v. General Telephone Company of the Southwest, 359 S.W.2d 260 (Tex. Civ. App. — San Antonio 1961, writ ref'd n.r.e.) (home rule city may authorize local telephone service by franchise). General law cities have authority under article 1016, V.T.C.S., to grant franchises to telephone companies conducting a local business. Fleming v. Houston Lighting & Power Co., 138 S.W.2d 520 (Tex. 1940), cert. denied, 313 U.S. 560 (1941); Southwestern Telegraph & Telephone Co. v. City of Dallas, 174 S.W. 636 (Tex. Civ. App. — Dallas 1915, writ ref'd) (construing special charter provision granting substantially same authority as art. 1016). See also V.T.C.S.

art. 1446c, § 21 (preserves right of municipality to grant franchise and charge therefore).

The Supreme Court has described these franchise charges collected from utilities as charges in the nature of rentals for the use of city streets. Fleming v. Houston Lighting & Power Co., supra. It expressly distinguished between such rental charges imposed by the city and a tax on the privilege of doing business. Fleming v. Houston Lighting & Power Co., 143 S.W.2d 923 (Tex. 1940) (overruling motion for rehearing). The court relied on the leading case of St. Louis v. Western Union Telegraph Co., 148 U.S. 92 (1893), which earlier held that such charges were rentals, and not taxes.

Decisions from other states generally hold that the percentage of gross receipts which a city collects from a utility pursuant to a franchise agreement does not constitute a tax. City and County of San Francisco v. Market St. Ry. Co., 73 P.2d 234 (Cal. 1937); Hanford Gas & Power Co. v. City of Hanford, 124 P. 727 (Cal. 1912); City of Hartford v. Connecticut Co., 140 A. 734 (Conn. 1928); City of Portland v. Portland Ry., Light & Power Co., 156 P. 1058 (Ore. 1916); City of Mitchell v. Dakota Cent. Telephone Co., 156 N.W. 63 (S.D. 1916); Nashville Gas & Heating Co. v. City of Nashville, 152 S.W.2d 229 (Tenn. 1941). Cf. Heerwagen v. Crosstown St. Ry. Co. of Buffalo, 71 N.E. 729 (N.Y. 1904) (payment of percentage of gross receipts is tax within particular statute). These courts emphasized that the payments were contractual obligations created by voluntary agreement rather than enforced contributions exacted by the government. See Nashville Gas & Heating Co. v. City of Nashville, supra; City of Hartford v. Connecticut Co., supra. See also Conlen Grain and Mercantile, Inc. v. Texas Grain Sorghum Producers, 519 S.W.2d 620 (Tex. 1975) (enforced contribution to provide revenue for state is a tax).

You state in your request letter that the payments are authorized by article 11.06, Taxation-General, which imposes a state gross receipts tax on telephone companies. Section 2 of article 11.06 provides:

> No city or other political subdivision of this State, by virtue of its taxing power, police power, or otherwise, shall impose an occupation tax or charge of any sort, for the privilege of doing business, upon any person, corporation, or association required to pay an occupation tax under this Article; provided, that nothing in this Article shall be construed to prohibit the collection of ad valorem taxes as provided or not prohibited by law, or any tax now imposed by franchise, and provided further that this Article shall not affect any contract now in existence or hereafter made between a city and the holder of a franchise.

The Supreme Court discussed the predecessor to article 11.06 in overruling a motion for rehearing in Fleming v. Houston Lighting & Power Co., 143 S.W.2d 923 (Tex.

1940), and concluded that the city had not imposed a prohibited charge for the privilege of doing business.  The statute preserves the city's right to collect payments pursuant to franchise agreements.  Even though article 11.06, section 2 refers to "any tax now imposed by franchise," we do not believe the Legislature meant to treat the franchise payments as taxes.  Article 8, section 3 of the Texas Constitution requires that taxes be levied by general laws.  County of Harris v. Shepperd, 291 S.W.2d 721 (Tex. 1956).  A tax cannot be imposed by franchise agreement.  Nashville Gas & Heating Co. v. City of Nashville, supra (dissenting opinion) (statute exempting utilities from tax "required by municipal . . . franchise").

These authorities hold, and we conclude, that the franchise charge is not a tax.  However, in some cases, part of the franchise charge may constitute a payment in lieu of taxes.  Home rule cities have authority to assess the franchise of a public corporation using the city streets separately from its tangible property.  V.T.C.S. art. 1175, § 8; City of Fort Worth v. Southwestern Bell Telephone Co., 80 F.2d 972 (5th Cir. 1936) (telephone company's franchise in streets is property subject to ad valorem tax).  See Texas & Pacific Ry. Co. v. City of El Paso, 85 S.W.2d 245 (Tex. 1935).  The standard agreement which Bell Telephone has entered into with many municipalities provides that the franchise charge shall be paid in lieu of any franchise tax levied as an ad valorem tax or any imposition other than the usual ad valorem taxes.  Thus it is possible that the franchise charge includes a payment in lieu of ad valorem tax on the franchise assessed pursuant to article 1175, section 8.  However, since article 1175, section 8 does not require the home rule city to assess the franchise separately, see Texas & Pacific Ry. Co. v. City of El Paso, supra at 249, the franchise charge does not necessarily include any payment in lieu of ad valorem taxes.  Such payments are not singled out to be passed on to the consumer, but are merged in the total franchise charge which appears on the phone bill.  Although the economic burden of any payment in lieu of ad valorem tax rests on the consumer, we believe its legal incidence remains on the telephone company.  See United States v. Tax Commission of Mississippi, 421 U.S. 599 (1975); Attorney General Opinion H-957 (1977); Annot. 44 L.Ed 2d 719 (1976).  Thus, the possibility that the franchise charge may in part constitute a payment in lieu of taxes does not raise the issue of a city tax being imposed upon the state. Therefore, we need not answer your second question regarding legal prohibitions against the payment of a tax by state agencies.

You finally ask whether the Constitution or statutes prohibit state agencies from paying the franchise charge, which we have determined not to be a tax.  The charge is part of the telephone rate set by the Public Utilities Commission pursuant to article 1446c.  See § 3(d).  We find no constitutional or statutory prohibition against the payment of properly established telephone rates by state agencies. Article 606a, V.T.C.S., authorizes the Board of Control to pay for telecommunications services used by state agencies, and an appropriation is available for that purpose.  Acts 1977, 65th Leg., ch. 872, at 2856.

## S U M M A R Y

The "municipal franchise charge" which appears on telephone bills represents a rental payment for the use of city streets and not a tax.  Even if in some instances the charge includes a payment in lieu of ad valorem tax on the telephone company's franchise, the legal incidence of that tax is not on the consumer.  We find no constitutional or statutory prohibition against a state agency's payment of a "municipal franchise charge" which is not a tax as part of the telephone rate established by the Public Utilities Commission.

Very truly yours,

JOHN L. HILL
Attorney General of Texas

APPROVED:

DAVID M. KENDALL, First Assistant

C. ROBERT HEATH, Chairman
Opinion Committee

jsn