METROPOLITAN NASHVILLE FIREFIGHTERS )
ASSOCIATION LOCAL 763 and )
B.R. HALL, JR., )
                                    )
                **Plaintiffs/Appellants,** )
                                    )
**vs.** ) **Appeal No.**
                                    ) **01A01-9701-CH-00019**
                                    )
**THE METROPOLITAN GOVERNMENT** )
**OF NASHVILLE AND DAVIDSON COUNTY,** ) **Davidson Chancery**
**TENNESSEE, F. CLAY BAILEY, in his capacity** ) **94-1510-I**
**as Chairman of the Civil Service Commission,** )
**and JOHN W. LYNCH, in his capacity as** )
**Personnel Director,** )
                                    )
                **Defendants/Appellees.** )

## IN THE COURT OF APPEALS OF TENNESSEE
## MIDDLE SECTION

## APPEAL FROM THE DAVISON COUNTY CHANCERY COURT
## AT NASHVILLE, TENNESSEE

## HONORABLE IRVIN H. KILCREASE, JR.

Michael J. Passino
Christopher M. Minton
LASSITER, TIDWELL & HILDERBRAND
213 Fifth Avenue North
Nashville, TN. 37219
ATTORNEY FOR PLAINTIFF/APPELLANTS

William Michael Safley
Department of Law
204 Metropolitan Courthouse
Nashville, TN. 37201
ATTORNEY FOR DEFENDANT/APPELLEE

## AFFIRMED

## WILLIAM B. CAIN, JUDGE

CONCURS:

HENRY F. TODD
PRESIDING JUDGE, MIDDLE SECTION

WILLIAM C. KOCH, JR., JUDGE

METROPOLITAN NASHVILLE FIREFIGHTERS )
ASSOCIATION LOCAL 763 and )
B.R. HALL, JR., )
 )
   **Plaintiffs/Appellants,** )
 )
vs. ) **Appeal No.**
 ) **01A01-9701-CH-00019**
 )
THE METROPOLITAN GOVERNMENT )
OF NASHVILLE AND DAVIDSON COUNTY, )
TENNESSEE, F. CLAY BAILEY, in his capacity )
as Chairman of the Civil Service Commission, )
and JOHN W. LYNCH, in his capacity as )
Personnel Director, )
 )
   **Defendants/Appellees.** )


# O P I N I O N

This case is before the Court on appeal from the Chancery Court of Davidson County, Tennessee wherein a Motion for Summary Judgement made by the Defendants was sustained by the Chancellor.

The issue to be resolved is the validity of the appointment by Mayor Phil Bredesen of Norman "Buck" Dozier as Metropolitan Fire Chief and the approval thereof by the Civil Service Commission of Metropolitan Nashville.

The case is before the Court for the second time. Plaintiffs filed an action against Defendants seeking Declaratory Judgement on May 18, 1994 asserting the nullity of the Dozier appointment. The Chancellor dismissed the Declaratory Judgement action under Rule 12 of the Tennessee Rules of Civil Procedure asserting that the Metropolitan Government action was administrative and the proper remedy was certiorari, under T.C.A. §27-9-102. The Western Section of the Court of Appeals sitting at Nashville reversed this decision on June 5, 1995 holding:

> "In our opinion, the rewriting of the qualifications for the office of Fire Chief of the Metro Fire Department amounted to legislative action on the part of the CSC, not administrative or quasi-judicial action. Plaintiffs were correct in seeking relief through declaratory judgment and the issues raised

2

by plaintiffs in their complaint should be considered and resolved in accordance with this procedure. Accordingly, the decree of the chancellor dismissing plaintiff's complaint is reversed."

Davidson Chancery No. C.A. No. 01A01-9410-CH-00487

Ample discovery was thereafter taken and both parties filed properly supported Motions for Summary Judgement.

On November 12, 1996, the Chancellor sustained the Motion for Summary Judgement filed by the Defendants stating his reasons as follows:

"The Civil Service Commission of the Metropolitan Government of Nashville and Davidson County did not violate the Metropolitan Charter when the Commission changed the job description for the position of Fire Chief. The wording of the Charter requires the Fire Chief to be 'especially qualified for the position by training and experience.' (Metropolitan Charter, Section 8.304) The Commission interpreted this provision to mean 'especially qualified' in management and administration. The Charter does not require the Fire Chief to be especially qualified in fire fighting, fire fighting administration, or have prior experience in the Metropolitan Fire Department as contended by the Plaintiffs.

The approval of the appointment of Norman 'Buck' Dozier to the position of Fire Chief does not violate the Metropolitan Charter. The Charter does not require prior fire fighting training or experience in order to be qualified for the position of Fire Chief. The Charter requires the Fire Chief to be 'especially qualified for the position by training and experience' based upon qualifications prescribed by the Civil Service Commission. The Metropolitan Civil Service Commission determined the proper qualifications for the position are a college degree and ten years of increasing responsible experience in management or administration. Norman 'Buck' Dozier met these qualifications.

The transfer of Norman 'Buck' Dozier from the Mayor's Office to the Metropolitan Fire Department does not violate the Metropolitan Charter. Norman 'Buck' Dozier meets all the entrance requirements for the position of Fire Chief established by the Charter and the Civil Service Commission of the Metropolitan Government."

In 1947, the General Assembly enacted the Nashville City Charter. This Charter established a Department of Fire and provided that Nashville's Mayor should appoint a chief of the Fire Department and that " . . .a vacancy in the office of Chief of the Fire Department shall be filled from the Department by appointment of the Mayor, pursuant to the Civil Service provisions of this Charter. . . ."

3

This provision remained in effect until the Nashville Metropolitan Government Charter was ratified by the people of Davidson County on June 28, 1962.

The ratified Metropolitan Government Charter became effective April 1, 1963 and the incumbent City of Nashville Fire Chief John Ragsdale became Metro's first Fire Chief. The Metro Charter provision controlling the appointment of a Director of the Fire Department was contained in Section 8.304, providing in part as follows:

> "A permanent vacancy in the office of director shall be filled by appointment of the mayor, subject to the civil service provisions of this Charter and subject to qualifications to be prescribed by the civil service commission designed to secure a person especially qualified for the position by training and experience."

Section 20.08 of the Metropolitan Charter also provided in part:

> "(g) *Director of Deparment of Fire.* The person holding the position of chief of the fire department of the City of Nashville on the effective date of this Charter, and having civil service status as such, is hereby appointed and designated as the first director of the department of fire."

In subsequent actions, the Metropolitan Civil Service Commission periodically revised the qualifications for Metro's Fire Chief with the September 24, 1991 revision providing under education and experience standards the following:

> "High School Diploma and ten (10) years of experience in the Fire Fighting Division of the Nashville Fire Department, including a total of seven (7) years of supervisory experience as a Fire Captain, District Fire Chief, Assistant Fire Chief, Chief Training Officer, Deputy Fire Chief-Fire Fighting, or Deputy Director."

At some time prior to November 10, 1992, Mayor Bredesen called John W. Lynch, then Director of Personnel for Metro Government, and asked for a review of the job description of the Fire Chief seeking to expand the qualifications in order to give consideration to management experience with emphasis on persons experienced in managing large corporations.

Following this request, the "education and experience" standards in the job description for the Metro Fire Chief were, on November 10, 1992, amended by the Metropolitan Civil Service Commission to read as follows:

> "Bachelor's degree from an accredited college or university, and ten (10) years of increasingly responsible management or administrative experience.
>
> No substitution."

So it was that the Metropolitan Civil Service Commission removed from the job description all requirements for previous fire service (experience).

The minutes of the November 10, 1992 meeting of the Metropolitan Civil Service Commission, wherein this change in job qualification was made, describes the basis for the present lawsuit.

> "Mr. John Kennedy stated that the proposed change to Fire Chief and Deputy Director was to require a Bachelor's Degree bringing the education in line with what is required for other Department Directors. Also to change the experience from specific experience in the Fire Fighting Division into general experience in administration and management, not necessarily obtained in the Fire Fighting Division of the Fire Department.
>
> . . .
>
> Mr. B.R. Hall, President of the Metro Fire Fighters Association stated that he thought the Fire Chief classification should continue to require the ten (10) years experience in the Fire Division of the Fire Department."

In 1993, incumbent Fire Chief Coleman retired and the Personnel Department posted a job announcement that it would accept from November 29, 1993 to December 3, 1993, applications for Fire Chief. The Personnel Department further on November 28, 1993, placed a classified ad in the Nashville Tennessean announcing that starting the next day it would accept Fire Chief applications until the end of the week. This ad ran for one day. There is no assertion by the Plaintiffs that these actions by the Personnel Department did not conform to the requirements of law.

Norman "Buck" Dozier submitted his application as did numerous other

5

individuals many of them from within the Fire Department. There is no assertion by Plaintiffs that the qualifications of Mr. Dozier did not match the qualifications required for a Fire Chief under the November 10, 1992 amendment to such qualifications adopted by the Civil Service Commission.

Mayor Bredesen appointed Mr. Dozier as Metro Fire Chief, effective January 1, 1994 and this appointment was approved by the Civil Service Commission on February 8, 1994.

Such are the controlling fact of this case which are undisputed in the record.

The only statement of issue presented for review by the Appellant asserts:

> "Whether the undisputed facts demonstrate that the Metro Civil Service Commission ('CSC') violated the Metro Charter when it a) eliminated a thirty-year requirement that Metro's Fire Chief must possess fire department experience; and b) approved a man without any fire department experience as Metro's current Fire Chief."

The difficulty with the position of the Appellant is that it essentially seeks to equate job qualification language contained in Civil Service Regulations, adopted by the Metropolitan Civil Service Commission, with statutory language contained in the Metropolitan Government Charter.

Metro Charter, Section 8.304, requires the Metro's Fire Chief be "especially qualified . . .by training and experience". This particular phrase is not otherwise defined anywhere in the Charter.

At the time the Metropolitan Government Charter was submitted for ratification to the people of Nashville-Davidson County, Section 20.08 (g) provided that the incumbent City of Nashville Fire Chief Mr. Ragsdale would be, in fact, the first Fire Chief under Metropolitan Government. Because Chief Ragsdale had many years experience in the old

6

City of Nashville Fire Department, Appellant asserts that construing Section 8.304 *in pari materia* with Section 20.08 (g) mandates that the term "especially qualified . . .by training and experience" contained in Section 8.304 elevates to Charter dignity a qualification that all future Fire Chiefs must have fire experience. Such a construction would effectively prevent the Civil Service Commission from ever changing the job qualifications of the Fire Chief from those qualifications possessed by Chief Ragsdale. This is a non-sequitur.

The same Section 20.08 of the original Metropolitan Charter designated the old City of Nashville government incumbents and various Davidson County government incumbents as "first" Metropolitan government holders of their respective positions. These included:

1. Metropolitan Clerk;
2. Metropolitan Treasurer;
3. Chief Medical Director;
4. Director of Department of Water and Sewerage Service;
5. Public Defender;
6. Director of Department of Police;
7. Budget Officer, Division of Budgets;
8. Chief Accountant;
9. Metropolitan Judges;
10. Clerk, Deputy Clerk and Court Officers of Metropolitan Court;
11. Director of Welfare;
12. Collections Officer.

It is significant, that in many of these positions the Charter itself designates certain minimal qualifications. The Director of Water and Sewerage Services must be a graduate engineer, trained and skilled in public utility problems. The Chief Traffic Engineer must have a least five years experience in traffic administration. The Budget Officer must have a least five years experience in budget preparation, administration and accounting.

There are no such Charter limitations in the qualifications of Fire Chief.

In construing a statute such as the Metropolitan Government Charter, the pertinent language must be considered in the context of the entire statute ". . .without any forced or

7

subtle construction extending its import" <u>McClain v. Henry I Segal, Co.</u> 834 S.W.2d. 295 (Tenn. 1992).

It is the failure to distinguish between the governing language of a statute and the wholly subordinate language of a civil service rule that defeats the position of the Appellants.

The Fire Chief of the old City of Nashville Government had to have fire experience, because under the private act of the legislature forming the Charter for the City of Nashville, the Fire Chief had to come from within the Fire Department. The first Fire Chief, under the Metropolitan Government Charter, had past fire experience because the Charter itself appointed the then incumbent Fire Chief of the City of Nashville. Those who succeeded Chief Rasdale, up until the appointment of Mr. Dozier, had to have fire experience not because of any provision of the Metropolitan Charter, but because prior fire experience was written into the qualifications for Fire Chief under the rules of the Metropolitan Civil Service Commission.

The argument of the Appellants that any future Fire Chief must possess a "modicum" of fire experience can be true only if Metropolitan Civil Service rules subsequent to the adoption of the Metropolitan Charter can be equated in dignity to the Charter language itself.

This effort to expand the meaning of words used in the Charter fails because no where else in the Metropolitan Charter is there any provision requiring that the Chief have prior fire service or even creating an ambiguity relative to prior fire service.

The Supreme Court of Tennessee after acknowledging the time honored rule, that the fundamental rule of construction of all instruments, including statutes, is that the intention shall prevail and to this end, the whole instrument must be considered, expressed the context in which the present controversy must be resolved.

> "But there is no authority for modifying, supplying, enlarging or expanding the meaning of words used in a statute, except when necessary to effectuate an intent otherwise appearing. It is not enough that the draftsman of a statutory enactment had in mind the accomplishment of a certain end, the enactment must itself expressly, or by necessary implication, indicate such an intention: otherwise the legislative power might be employed to effectuate objects not at all in the contemplation of the legislative body. The Courts are not required to depart from the primary meaning of words, and the statutory context in which they stand to find and apply an intention not otherwise apparent."

> Nashville Gas and Heating Co. v. City of Nashville
> _____ 152 S.W. 2d. 229, 233-234

In this case, the Metropolitan Charter does not require that the Fire Chief have prior fire service. The November 10, 1992 change in the Civil Service qualification rules was made within the discretionary powers of the Metropolitan Civil Service Commission. Norman "Buck" Dozier met those qualifications and submitted an application for the job. His application along with other applications were before the Civil Service Commission. Mayor Bredesen chose Mr. Dozier for Fire Chief.

All of these actions were in conformity with the Metropolitan Charter and the action of the Chancelor in sustaining the Motion for Summary Judgement made by the Defendant was correct.

The judgement of the Chancellor is affirmed with costs assessed against the Appellant.

_____
**WILLIAM B. CAIN, JUDGE**


_____
**HENRY F. TODD,**
**PRESIDING JUDGE, MIDDLE SECTION**


_____
**WILLIAM C. KOCH, JR., JUDGE**

9